IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR NO. 2:05CR119-F |
| | ) | (WO) |
| DON EUGENE SIEGELMAN | ) | |
| RICHARD SCRUSHY | ) | |
| GARY MACK ROBERTS | ) | |
| PAUL MICHAEL HAMRICK | ) | |

**ORDER AND MEMORANDUM OPINION ON RECUSAL**

**I. Introduction**

On October 27, 2005, I made disclosures to the parties to afford them an opportunity
to determine if they believed there was any reason why I should recuse from further
participation in this case.  The nature of those disclosures will be set out with particularity
below.  On November 3, 2005, defendant Roberts filed a motion seeking my recusal.  That
motion sets forth no grounds whatsoever; however, for analytical purposes, I will assume
that Roberts seeks my recusal on the basis of my disclosures to the parties.  On November
3, 2005, defendant Siegelman filed a motion seeking my recusal on the basis of the facts I
disclosed to the parties.  On November 4, 2005, defendant Scrushy filed a motion seeking
my recusal on those same grounds.[1]

_____

[1]Scrushy's motion correctly observes that the recusal statute, 28 U.S.C. § 455(b), requires recusal if
any of specified circumstances exist.  Scrushy misunderstands the purpose of my disclosure when he
suggests that I was seeking approval of the parties to continue in the case.  The statute plainly forbids such a
practice,  28 U.S.C. § 455(e), with regard to the grounds specified in § 455(b).  Moreover, the transcript of
that proceeding shows that I did not ask for remittal of any disqualification including any possible
disqualification under 28 U.S.C. § 455(a).  I had already reached a preliminary determination that none of
the disclosed circumstances warranted recusal.  Nonetheless, I concluded that the views of the parties, if
any, on the matter would assist me in reaching a final determination of the matter.

The disclosures I made took place during an in chambers conference. The relevant statement I made during that conference is set forth in full.

> For a number of years, my wife was the debate coach at Saint James High School. Two of her students, Jennifer Marcato and Emily Marcato, are daughters of the Marcato who is named in the indictment as one of the persons from whom a bribe was obtained. I worked with her students, helped her with her students when I could. And those two young ladies at various times would, in casual conversation about family life, describe difficulties that her father had with the Alabama Department of Transportation. It was things like griping about I didn't get a contract, they won't pay any attention to my striping. You know, I always -- well, I never thought much of it except to think that it was just the typical kind of things that a child will repeat from having heard from their parents about difficulties with the business. But I make that disclosure. I don't know how it relates to whatever this is.

> The second disclosure is that my son-in-law presently is a vice president with HealthSouth. He, at the time of Mr. Scrushy's involvement with HealthSouth, was a financial analyst for their stand-alone outpatient surgical centers.

> If any of you think that either of those two matters or both requires my recusal, you are ordered to file a motion within seven days from today's date.

Following these disclosures, I have subsequently learned that my oldest daughter and her husband, by virtue of their ownership of stock in Healthsouth Corporation, are members of the putative[2] plaintiff class in *In re Healthsouth Corporation Securities Litigation*, 2:03-cv-01500-KOB (N.D. Ala.) in which Richard Scrushy is a named defendant. Even though the parties have not raised this as a ground for recusal,[3] I have an

---

[2] The docket sheet reflects that the court in that case has not yet determined if the action should proceed as a class action pursuant to FED.R.CIV.P. 23(a), (b)(3) as requested by the plaintiffs.

[3] Scrushy suggests that his matter be referred to another judge for an evidentiary hearing. The other disqualification statute, 28 U.S.C. § 144, applicable only to district judges requires this approach but § 455 does not.

independent duty to consider whether these or any other facts warrant recusal.   *United States v. Cerceda*, 139 F.3d 847, 852-53 (11th Cir.1998) (holding that "[a] judge is under an 'affirmative, self-enforcing obligation to recuse himself *sua sponte* whenever the proper grounds exist.' ")

Recusal of a federal judge is controlled by 28 U.S.C. § 455 which reads in pertinent part as follows:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

> (b) He shall also disqualify himself in the following circumstances:

>> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

>> (2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

>> (3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

>> (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

>> (5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

3

(I) Is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) Is acting as a lawyer in the proceeding;

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

(c) A judge should inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household.

(d) For the purposes of this section the following words or phrases shall have the meaning indicated:

(1) "proceeding" includes pretrial, trial, appellate review, or other stages of litigation;

(2) the degree of relationship is calculated according to the civil law system;

(3) "fiduciary" includes such relationships as executor, administrator, trustee, and guardian;

(4) "financial interest" means ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party, except that:

(i) Ownership in a mutual or common investment fund that holds securities is not a "financial interest" in such securities unless the judge participates in the management of the fund;

(ii) An office in an educational, religious, charitable, fraternal, or civic organization is not a "financial interest" in securities held by the

4

organization;

(iii) The proprietary interest of a policyholder in a mutual insurance company, of a depositor in a mutual savings association, or a similar proprietary interest, is a "financial interest" in the organization only if the outcome of the proceeding could substantially affect the value of the interest;

(iv) Ownership of government securities is a "financial interest" in the issuer only if the outcome of the proceeding could substantially affect the value of the securities.

(e) No justice, judge, or magistrate judge shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.

## II.  The § 455(b) Circumstances

The second section of the recusal statute, § 455(b) sets forth specific circumstances in which a judge must recuse himself.  Under the circumstances set forth in the statute, recusal is mandatory, and the parties may not waive disqualification.  I will discuss whether my recusal is required under the subsections of 455(b) which may be applicable.[4]

Section 455(b)(1) requires recusal "[w]here . . . [a judge] has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."  No party has suggested or come forward with any evidence

---

[4]Sections 455(b)(2) and (b)(3) plainly are not applicable and no further discussion is required. Sections 455(b)(5)(i), (ii) and (iv) likewise are not applicable.

that I have any personal bias or prejudice concerning any of them.  To be blunt, I declare here that I have no personal bias or prejudice involving any party to this litigation.  I have no personal knowledge of any disputed evidentiary facts concerning the allegations contained in the indictment.[5]  Section 455(a)(1) does not require my recusal.

Section 455(b)(4) requires recusal when a judge "knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding."  No minor children reside in my household.  Neither I nor my spouse have any financial interest in the subject matter or any party to this litigation.

This leaves those mandatory recusal sections of 455(b)(4) where I or under 455(b)(5)(iii) where a person within the third degree of relationship to me or my spouse "is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding."  Neither I or my spouse have any interest, financial or otherwise, which could be affected by the outcome of this litigation.  However one of my daughters and her spouse own stock in Healthsouth Corporation and by virtue of that ownership are putative

---

[5]In his recusal motion, Scrushy laments that he does not know the particulars of my relationship with my son-in-law and about any discussions we have had about Scrushy and Healthsouth.  As reflected throughout this opinion I have acquired no knowledge about Healthsouth's internal affairs from my son-in-law.  Scrushy also suggests that recusal is required because Healthsouth continues to cooperate with the government in their ongoing investigations.  "Healthsouth apparently continues to play a similar role in the investigation and prosecution of the instant criminal case."  Scrushy Recusal Mot. ¶ 9 at 3.  First, Scrushy's use of the word "apparently" demonstrates the speculative nature of his contentions.  Second, corporate cooperation in an investigation does not evidence bias; rather, it evidences a respect for the law generally and truth in particular.

class members in *In re Healthsouth Corporation Securities Litigation* now pending in the United States District Court, Northern District of Alabama. Defendant Richard Scrushy is a named defendant in that securities class action brought pursuant to 15 U.S.C. § 78j(b) and 78t(a) and 17 C.F.R. § 240.10b-5 (Rule 10b-5). The complaint[6] in that case[7] alleges that Scrushy was a controlling person with the ability to cause the corporation "to engage in the unlawful conduct complained of . . . " Complt. at ¶ 13. The docket reflects that the parties in that case have been ordered to mediate the dispute. The initial question for me is whether my adult children's status as putative class members in a civil case in which Richard Scrushy is a named defendant constitutes an " interest that could be substantially affected by the outcome of the proceeding."

The term "the proceeding" refers, of course, to the case in which I am the referral Magistrate Judge. Under the operating procedures of the Middle District of Alabama, a referral Magistrate Judge has responsibility in a criminal case for pretrial case management and the resolution of all pretrial motions except for motions in limine. Thus, the precise question is whether the outcome of this criminal proceeding can be said to substantially affect the interest which my children have in the civil litigation. It is generally established that for purposes of § 455(b), a remote, contingent, or speculative interest is not a

---

[6]The complaint to which I refer in this opinion is the original complaint filed in *Smith v. Healthsouth*, CV-02-AR-2105-S, which later was designated the lead case and redesignated as *Healthsouth Securities Litigation*, 2:03-cv-01500-KOB.

[7]Numerous securities actions were filed in the Northern District of Alabama and are consolidated in this case.

disqualifying interest because it lacks the substantial affect required by the statute.   In

*Tramonte v. Chrysler Corp.*, 136 F.3d 1025 (5th Cir. 1998) (Appeal by the automobile

manufacturer from an order denying its motion to recuse and remanding the case--a class

action alleging that the defendant's manufacturing process caused paint to flake from its

vehicles--to state court for want of jurisdiction), the court gave, as an example, that owning

stock in a publicly held company that may own a vehicle manufactured by the defendant

offered no more than a remote or speculative interest.  *See also  In re New Mexico Natural

Gas Antitrust Litigation,* 620 F.2d 794, 796 (10th Cir.1980) and *In re Virginia Elec. &

Power Co.*, 539 F.2d 357 (4th Cir. 1976)[8] (both holding that the possible future effect of a

case's outcome on the price of utility bills was remote and contingent and, therefore, not

disqualifying.

In the criminal case presently under consideration, the possible future affect of its

outcome on an interest[9] of my adult children is even more difficult to discern.   The affect

of either acquittal or conviction  would have on the civil securities litigation seems purely

_____

[8]Cited with approval in *Jefferson County v. Acker*, 92 F.3d 1561 (11th Cir. 1996) (recusal appendix), *cert. granted, judgment vacated on other grounds*, 520 U.S. 1261 (1997), *on remand to*, 137 F.3d 1314 (11th Cir. 1998), *cert. granted in part*, 525 U.S. 1039 (U.S. 1998) *and judgment rev'd on other grounds*, 527 U.S. 423 (1999).

[9]Whether an interest in the outcome of litigation is a protectible interest is itself an interesting issue.  The Fourth Circuit Court of Appeals has observed  that "[w]hether an interest contingent upon the outcome of other pending litigation constitutes a 'significantly protectable interest' has been the source of much disagreement." *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir.1991).  It is unnecessary for me to delve into this separate question to resolve the recusal question.

speculative.[10] "Indeed, lawsuits are rarely certain and free of doubt. Experienced lawyers have long since learned that it is unwise and indeed, ultra foolish to predict the results of litigation." *Jones v. C.I.R.,* 306 F.2d 292, 301 (5th Cir. 1962). The Sixth Circuit's analysis of an analogous problem is instructive.

> Petitioners also argue that the prosecutor improperly questioned the veniremen during voir dire in asking the prospective jurors whether they would be biased due to the pending civil litigation between petitioners and the arresting officers. Petitioners contended that the prosecutor's comments could have biased the jury against them by creating the impression that an acquittal would have a collateral effect on the pending civil litigation and would result in disgrace and financial loss to the officers involved in the case. We find the petitioners' argument wholly speculative and without merit. The prosecutor's allegedly objectionable comments referring to the pending civil litigation could have just as easily biased the jury in favor of the petitioners since they could have assumed that a conviction on the assault and battery charges would preclude the petitioners from obtaining compensation for their severe injuries.

*Schrader v. Fowler,* 852 F.2d 569, 1988 WL 76521, *5 (6th Cir. 1988).

In the same vein, in *United States v. Carboni*, 204 F.3d 39 (2nd Cir.2000), the court held that the district court properly refused to consider the outcome of a potential lawsuit in determining for sentencing purposes the amount of loss caused by the criminal defendant's fraudulent acts because "the cost of litigation and the uncertainty of success made any recovery ... speculative." *Id.* at 46. Indeed, it is mildly ironic that the injury requirements of a civil RICO action[11] cannot be established by speculation or be contingent on future

---

[10]In the final part of this opinion discussing whether my impartiality might reasonably be questioned, I attempt with some trepidation to assess the affect. *Ante* at 19-20.

[11]The criminal RICO proceeding against the defendants is brought pursuant to 18 U.S.C. § 1962. Section 1964 of Title 18 provides for a private cause of action for "[a]ny person injured in his business or

events that may or may not occur.  *See, e.g., Imagineering v. Knighten Bros. Construction*, 976 F.2d 1303, 1310- 11 (9th Cir.1992) (RICO claim dismissed because alleged injury required speculation that other events would have occurred); *Lincoln House v. Dupre*, 903 F.2d 845, 847 (1st Cir.1990) (allegation of RICO injury that is contingent on outcome of separate litigation is purely speculative and not ripe for resolution); *Hecht v. Commerce Clearing House*, 897 F.2d 21, 24 (2d Cir.1990) (plaintiff's allegation that RICO violation would cause him to lose commissions in future too speculative to satisfy injury requirement); *Arabian American Oil. Co. v. Scarfone*, 713 F.Supp. 1420, 1421 (M.D.Fl.1989) (speculation that injury might be inflicted is insufficient to state RICO claim).

As the Supreme Court noted in another context, "[i]t is just not possible for a litigant to prove in advance that the judicial system will lead to any particular result in his case." *Whitmore v. Arkansas*, 495 U.S. 149, 159-60 (1990).  Assuredly, the question of recusal which I consider is not a matter of proof.  Rather it is a question of judgment about whether the interest of my adult daughter and her husband as putative class members in the pending securities litigation against Richard Scrushy is an "interest" which "that could be substantially affected by the outcome of . . . [this criminal]  proceeding." After careful consideration I conclude that any possible affect is too remote and uncertain to be properly

property by reason of a violation of section 1962...." 18 U.S.C. § 1964(c). To establish a violation of section 1962(c), a civil RICO plaintiff must show that the defendants engaged in "(1) conduct (2) of an enterprise (3) through a pattern of (4) racketeering activity.... In addition, the plaintiff has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).

considered as having a substantial affect.  My recusal is not mandated by 28 U.S.C. §

455(b)(5)(iii).

I have carefully considered all of the circumstances which give rise to mandatory

recusal under § 455(b), and I conclude none mandate my recusal.  In reaching this

conclusion I have carefully considered my own knowledge based on associations more fully

described in this opinion.  I have no extrajudicial knowledge of any disputed issues of facts

bearing on or related to the facts set forth in this indictment.

### III.  The § 455(a) Recusal Issue

The first section of the recusal statute, 28 U.S.C. § 455(a) requires that I disqualify

myself "in any proceeding in which . . . [my] impartiality might reasonably be questioned."

"Under § 455(a), the standard is whether an objective, fully informed lay observer would

entertain significant doubt about the judge's impartiality." *Christo v. Padgett*, 223 F.3d

1324, 1333 (11th Cir.2000).  Other formulations of the test carry the same, essential

admonition that the test is grounded in reason and objectivity.

> The test for determining whether a judge should disqualify himself under
> section 455(a) is whether a reasonable person knowing all the facts would
> conclude that the judge's impartiality might reasonably be questioned. *See
> Hepperle v. Johnston*, 590 F.2d 609, 614 (5th Cir.1979). Stated another way,
> the question is "whether an objective, disinterested, lay observer fully
> informed of the facts underlying the grounds on which recusal was sought
> would entertain a significant doubt about the judge's impartiality." *Carter v.
> West Pub. Co.*, No. 99-11959-EE, 1999 WL 994997 (11th Cir. November 1,
> 1999).

*Byrne v. Nezhat,* 261 F.3d 1075, 1101 (11th Cir. 2001).

A "judge is under an affirmative, self-enforcing obligation to recuse himself *sua*

*sponte* whenever the proper grounds exist.  Section 455 does away with the old 'duty to sit' doctrine and requires judges to resolve any doubts they may have in favor of disqualification."  *United States v. Kelly*, 888 F.2d 732, 744 (11th Cir.1989).  However, judges should not recuse themselves for imaginary reasons; judge shopping should not be encouraged.  *Murray v. Scott,* 253 F.3d 1308, 1313 (11ᵗʰ Cir. 2001).  "There is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is."  *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir.1987). "[A] judge, having been assigned to a case, should not recuse himself on unsupported, irrational, or highly tenuous speculation."  *United States v. Greenough*, 782 F.2d 1556, 1558 (11th Cir.1986).  In short, there must actually exist some reasonable doubt concerning a judge's impartiality.  Otherwise, Congress would not have required that a judge's impartiality must "reasonably be questioned" in order for the judge to recuse, because "there is the need to prevent parties from ... manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking."  *FDIC v. Sweeney,* 136 F.3d 216, 220 (1st Cir.1998).  A charge of partiality must be supported by some factual basis . . . "  *In re United States*, 666 F.2d 690, 694 (1st Cir.1981).

The fact that my son-in-law is presently a Healthsouth Corporation vice-president and during Richard Scrushy's tenure as president of Healthsouth was employed by the corporation is not, standing alone, a fact which would cause an objective, fully informed lay observer to entertain significant doubt about my impartiality.  As I have stated before, I have no knowledge of any issues of fact related to this indictment.  Moreover, to his great

credit my son-in-law has never discussed with me anything about internal corporate information to which he is privy but has steadfastly maintained the confidences of the corporation.

That Richard Scrushy himself is a controversial public figure and that his former leadership of Healthsouth Corporation was stormy is no secret to anyone with access to a newspaper, a television or the Internet. But my general knowledge about controversy surrounding Mr. Scrushy or any other defendant for that matter does not warrant recusal. As Eleventh Circuit Judge Tjoflat has noted, "American judges are not required to hide their heads in the sand upon taking the oath of office, and exclude themselves from civic life as if they have joined some juridical monastic order. In taking the oath of office as a judge, a person does not agree to be a hermit removed from the world." *Carter v. West Pub. Co.,* 1999 WL 994997, *4 (11th Cir. 1999). In particular, I have assured myself that my son-in-law's position with Healthsouth did not bring him into contact with any matter in dispute in this criminal case. As I noted for the parties, during Scrushy's tenure he was a financial analyst with the outpatient surgical and rehabilitation centers operation by Healthsouth.

An employment relationship between a judge's child and a party to a suit has not generally been held to merit per se disqualification. *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 882 F.2d 1556 (Fed.Cir. 1989). *See also In re Fox West Coast Theatres*, 88 F.2d 212, 226 (9th Cir.1937) (even if judge's son were employed by a bankrupt, that fact would not disqualify judge from hearing bankruptcy proceedings). In *United States ex rel.*

*Weinberger v. Equifax, Inc.*, 557 F.2d 456, 463-64 (5th Cir.1977), the fact that the judge's son was an associate of the law firm representing defendant did not require recusal where the son did not actively participate in the case. Here, there is no relationship between any relative of mine and a party. Instead, a relative of mine works for a corporation of which Richard Scrushy was an executive at the time he engaged in allegedly unlawful acts of bribery and deprivation of the honest acts of Alabama's Governor. These acts related to the appointment of a person to Alabama's Certificate of Need Board and are wholly unrelated to the responsibilities of any relative of mine. I conclude that my son-in-law's employment with a non-party corporation is insufficient to cause a objective, fully informed lay observer to reasonably question my impartiality.

In the same vein, my association with the children of Forrest "Mac" Marcato would not lead an objective, fully informed lay observer to reasonably question my impartiality. The tenor of Marcato's children's comments were that their father experienced problems or difficulties with getting the Alabama Department of Transportation to use a road striping product which would improve safety during rainy weather at night. No mention of any particular official was made. I considered then and now that these comments were simply complaints about decisions by a government agency to which Marcato was attempting to market a product. If a judge were required to disqualify himself in a case involving a public figure or entity because he knew or was associated with persons who complained about decisions, only judges who resided in caves or monasteries could ever sit on a case. In this country complaints about actions of public officials are the norm, and awareness of

14

those complaints does not implicate the statute requiring recusal for an appearance of impropriety.

The last recusal question for me, then, is whether my daughter and her husband's position as putative class members in the *Healthsouth Securities Litigation* action in which Richard Scrushy is a named defendant requires my recusal under the appearance of impropriety standard of § 455(a). I have already discussed my conclusions concerning this same question under § 455(b). While § 455(a) is a catch-all provision that has a "broader reach" than § 455(b) and can apply to the same facts, "the provisions have some ground in common as well, and should not be applied inconsistently." *Liteky v. United States*, 510 U.S. 540, 553, n. 2 (1994). With that I understanding, I will now consider whether the "broader reach" of § 455(a) requires my recusal.

First, even though there is some authority to the contrary,[12] I will approach this question on the basis that my children's status as putative class members makes them parties[13] to the Healthsouth Securities Litigation. Nonetheless, as reflected in paragraph 21 of the original complaint in that case,

> Throughout the Class Period, Healthsouth had over 396 million shares outstanding, which were actively traded on the New York Stock Exchange ("NYSE") throughout the Class Period. While the exact number of Class members can only be determined by appropriate discovery, plaintiffs believe that Class members number at least in the thousands and that they are geographically dispersed.

---

[12]*MDCM Holdings, Inc. v. Credit Suisse First Boston Corp.*, 205 F.Supp.2d 158 (S.D.N.Y.2002).

[13]They are not lead or named plaintiffs and have had no role in the litigation whatsoever.

Of course, it bears repetition to point out that the only connection between this criminal case and the *Healthsouth Securities Litigation* is that Richard Scrushy is a named defendant in both.  This criminal case is about bribery of a state official for the purpose of securing an advantage for Healthsouth Corporation.  The *Healthsouth Securities Litigation* is about the failure of corporate directors to "promptly disseminate accurate and truthful information with respect to Healthsouth's operations and financial condition  . . . [resulting] in the price of Healthsouth securities . . . [being] artificially inflated during the Class Period, damaging plaintiffs and the Class."  There is not one word in the indictment or the complaint which suggests that there is any relationship, except some temporal overlap, between the alleged criminal and civil violations of law.

I have found no case with similar factual circumstances, but some other cases are instructive.  In a case involving a financial interest of a judge, *In re Placid Oil Co.*, 802 F.2d 783, 786 (5th Cir.1986), the plaintiff sued 23 banks. The trial judge had a large investment in a non-party bank.  The plaintiffs argued for recusal under the "subject matter in controversy" language of § 455(d)(4) because the rulings the judge would have to make in order for them to recover would have a detrimental effect on all banks in the state. *Id.* The Fifth Circuit rejected plaintiffs' argument, holding that a potential effect on the banking industry of a state was "an indirect and speculative" event not covered by the first phrase of the statute. *Id.* at 786-87.  More particularly, the court held that this was not "situation in which a judge's impartiality might reasonably be questioned." *Id.* at 787.

In *United States v. Nobel*, 696 F.2d 231 (3rd Cir.1982), the Third Circuit held "that

16

a judge presiding over a criminal action who holds stock in a corporate victim of the crime does not have a 'financial interest in the subject matter in controversy.' " *Id.* at 235. While the judge's stock ownership in the non-party corporation satisfied the financial interest test of § 455(b), the proceedings before the court could have no effect on the defrauded company. *Id.* at 234. Without any connection to his financial interest, the court's control of the proceedings did not draw his interest into the "subject matter" of the controversy. However, here the court concluded that the ownership of the stock was a ground requiring recusal. "We adopt the view that a judge who owns a substantial interest in the victim of a crime must disqualify himself or herself in the subsequent criminal proceeding because the strict overarching standard imposed by section 455(a) requires that the appearance of impartiality be maintained." *Id.* at 235-36. In *United States v. Lauersen*, 343 F.3d 604, 609- 611 (2nd Cir.2003), the court held that recusal was not required because a district judge's ownership of .00009 percent of victim insurer's stock was not a substantial interest and would not cause a reasonable, objective person to question the judge's impartiality. The difference in *Noble* and *Lauersen* is explained by reference to whether the interest involved was a "substantial interest."

But none of these cases is dispositive. Neither I nor any of my family have any interest much less a substantial interest in the outcome of this criminal case. Of course, it is sometimes all too easy for judges to get caught up in the minutiae of legal analysis and overlook common sense. Thus, the more sensible question becomes whether an objective, fully informed lay observer would entertain significant doubt about my impartiality

17

regarding Richard Scrushy because he is a defendant in a case in which my son-in-law is a putative member of the plaintiff class.  It seems to me that in answering that question an objective, fully informed and reasonable person would want to know how the outcome of the criminal case would affect the securities litigation. *See e.g. Sollenbarger v. Mountain States Tel. & Tel. Co.*, 706 F.Supp. 776 (D.N.M.1989).  Divining the answer to that question is no easy task.[14]

Aside from a mistrial, which presumably only delays a final decision, in a criminal case the outcomes are either conviction or acquittal.  If acquittal is the result, the status quo is maintained with the consequence that the outcome of this case has no effect on the *Healthsouth Securities Litigation*.  If conviction is the result, the defendants will be subject to either or both imprisonment and fines, as well as restitution.  Thus, conviction could but not necessarily will result in a reduction of Richard Scrushy's wealth, implicating negatively his ability to respond to a judgment against him in the securities litigation.[15]  However, as a matter of law and, therefore, reality, the ability of Richard Scrushy to respond to civil damages in the *Healthsouth Securities Litigation* can have little or no effect on whether any member of the class can recover if they prevail.  The civil complaint alleges that during his tenure with Healthsouth Richard Scrushy was a "controlling person."

---

[14]Regardless of the outcome of the criminal case, the civil trial will continue because generally, a criminal trial does not bar a subsequent civil trial.  *See United States v. Barnette*, 10 F.3d 1553 (11th Cir. 1994).

[15]That observation suggests that if I were to harbor any partiality at all, it would be in favor of Richard Scrushy and against the government, which opposes my recusal.  But, of course, as a judge I can favor neither side.  Thus, this does not answer the appearance of impartiality question.

Pursuant to 15 U.S.C. § 78t(a) there is joint and severable liability of such persons and the corporate entity.

> It is a well settled principle that joint and several liability is appropriate in securities laws cases where two or more individuals or entities have close relationships in engaging in illegal conduct. This holds true even where one defendant is more culpable than another.

*S.E.C. v. Calvo,* 378 F.3d 1211, 1215 (11th Cir. 2004) (citations omitted).

Thus, Healthsouth would be required to respond to any determination of liability in the securities case. It is simply not reasonable to believe that I am not impartial in this case when the outcome of this criminal case even under the most fanciful of circumstances could have little or no affect on the outcome of the securities litigation. Moreover, it is not reasonable to believe that I lack partiality towards Richard Scrushy because my son-in-law is "suing" him. As a member of the putative class, my son-in-law is also "suing" Healthsouth Corporation, the very entity for which he works and of which he is a vice-president. An objective, fully informed lay person would find it ludicrous to suggest that under these circumstances I lack impartiality towards a defendant in the criminal case because he is a defendant in the civil case.

In sum, the outcome of this criminal litigation reasonably can have little or no affect on the pending *Healthsouth Securities Litigation* in which my daughter and son-in-law are putative class members. Any affect is tenuous at best and certainly not substantial. Even though my children are "suing" a defendant in the criminal case in which I am the referral judge, I conclude that no fully informed, reasonable lay person would harbor any doubts

about my impartiality under the circumstances of this case.  Accordingly, I conclude that I

should not disqualify myself in this  proceeding because it is not one in which my

impartiality might reasonably be questioned.  Therefore, it is

ORDERED that the motions to recuse (doc. ## 32, 33 and 34) be and are hereby

DENIED.

Done this 10th day of November, 2005.


_____/s/Charles S. Coody_____
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE