United States v. Gary Mack Roberts, et al

In the United States District Court
for the Middle District of Alabama
Northern Division

Case No. 2:05-CR-119-F

Exhibit A: Transcript of November 16, 2005 Status Conference

to Roberts' Brief in Support of Motion to Sever

**Page 1**

```
 1              IN THE UNITED STATES DISTRICT COURT FOR

 2                  THE MIDDLE DISTRICT OF ALABAMA

 3                         NORTHERN DIVISION

 4

 5

 6   UNITED STATES OF AMERICA

 7

 8        Vs.                    CR. NO. 05-119-F

 9

10   DON EUGENE SIEGELMAN, RICHARD

11   M. SCRUSHY, PAUL MICHAEL HAMRICK

12   and GARY MACK ROBERTS

13             Defendants

14

15

16        *   *   *   *   *   *   *   *   *

17             STATUS CONFERENCE

18        *   *   *   *   *   *   *   *   *

19   Before Hon. Mark E. Fuller, Judge,

20     at Montgomery, Alabama, November 16, 2005

21        *   *   *   *   *   *   *   *   *

22

23

24

25
```

**Page 2**

```
 1   APPEARANCES: For the Government: Louis V. Franklin, James B.

 2                                    Perrine, Stephen P. Feaga,

 3                                    Richard C. Pilger and Joseph

 4                                    L. Fitzpatrick, Jr.,

 5                                    Assistant U.S. Attorneys

 6        For the Defendant, Seigelman:  G. Douglas Jones,

 7                                    Charles R. Pitt

 8                                    Attorneys at Law

 9        For the Defendant, Scrushy:  H. Lewis Gillis,

10                                    Chris Whitehead and Bruce

11                                    Maloy,

12                                    Attorneys at Law

13        For the Defendant, Hamrick:  Ronald W. Wise,

14                                    Attorney at Law

15        For the Defendant, Roberts:  Stewart D.

16                                    McKnight, III,

17                                    Attorneys at Law

18   Also Present:

19             Richard M. Scrushy

20             Paul M. Hamrick

21             Don Eugene Siegelman

22

23

24

25
```

**Page 3**

1   (The above case coming on for hearing at Montgomery,
2   Alabama, November 16, 2005, before Honorable Mark E. Fuller,
3   Judge, the following proceedings were had commencing at 11:07
4   a.m.:)
5        THE COURT: Good morning, counsel, and parties.
6   Because of the number of participants this morning I thought
7   it would be better to have our status conference in
8   chambers -- or in the courtroom in lieu of chambers. I had a
9   request from my court reporter to get a rollcall from
10   everyone, so if you would go around and take this time to
11   introduce each client and the attorney representing that
12   client, as well as the attorneys for the United States so
13   that Jimmy can get an accurate identification of everyone for
14   an accurate record. We will have all of these proceedings,
15   status conferences as well as all formal proceedings on the
16   record. So let's do that first. If we can, start with the
17   United States and get a rollcall.
18        MR. FRANKLIN: Yes, Your Honor. Louis Franklin for
19   the United States, Your Honor.
20        MR. FEAGA: Steven Feaga for the United States, Your
21   Honor.
22        MR. FITZPATRICK: Good morning, Your Honor, Joseph
23   Fitzpatrick for the United States.
24        MR. PILGER: Richard Pilger for the United States,
25   Your Honor.

**Page 4**

1        MR. PERRINE: J.B. Perrine for the United States,
2   Your Honor.
3        MR. JONES: Your Honor, I am Doug Jones for Governor
4   Siegelman.
5        MR. PITT: Your Honor, Redding Pitt for Governor
6   Siegelman.
7        MR. WISE: Ron Wise, Your Honor, for Mr. Paul
8   Hamrick.
9        MR. MCKNIGHT: David McKnight on behalf of Mack
10   Roberts.
11        MR. MALOY: Your Honor, I am Bruce Maloy from
12   Atlanta, Georgia, on behalf of Richard Scrushy and I have
13   filed a petition to appear pro hac in this matter.
14        THE COURT: That's still pending as of this morning
15   I believe, Mr. Maloy. You may proceed as though it were
16   ruled on and we will get a ruling on that timely.
17        MR. MALOY: Thank you, Your Honor.
18        MR. GILLIS: Your Honor, Lewis Gillis for Richard
19   Scrushy.
20        MR. SCRUSHY: Richard Scrushy, Your Honor.
21        THE COURT: Good morning.
22        MR. WHITEHEAD: Your Honor, Chris Whitehead on
23   behalf of Richard Scrushy. I have not filed a notice of
24   appearance yet, but I will do that.
25        MR. SIEGELMAN: Your Honor, I'm Don Siegelman.

## Page 5

1  THE COURT: Good morning, Mr. Siegelman.

2  MR. HAMRICK: Paul Hamrick.

3  THE COURT: Good morning. Obviously the purpose of

4  this status conference is for us to get a good idea about

5  case management and to manage this case and to get it managed

6  to a good start before any substantial problems arise that

7  would interfere with the trial date that has not been set

8  yet. We also need to address any problems as early as we can

9  possibly do so, and to that end I have got a list of issues

10  that I would like to address with the attorneys.

11  I must say I have had some experience with some of

12  the attorneys in this case but by and large I have not had

13  experience, either as a practitioner or as a judge with many

14  of the attorneys. I will try to be as open to what each of

15  you have to say as the case progresses, and you can assure

16  yourself and your client that whatever you wish to add to a

17  hearing I will give you an opportunity to make your statement

18  and add your statement to the record, but we are going to do

19  so in a dignified and professional manner. We are going to

20  respect the integrity of the judicial office that we occupy.

21  Before a trial date can be discussed we need to

22  discuss several things. Among those things are the length of

23  the trial, the possibility of any motion or motions to sever

24  this case for trial, and the status of any discovery. I would

25  like to start first with the issue of discovery. I have

## Page 6

1  reviewed the order on arraignment that was entered by Chief

2  Magistrate Judge Charles Coody, and I believe that November

3  the 10th was the date that the initial disclosures due to the

4  Defendants should have been exchanged, and then the

5  reciprocal discovery from the Defendants was due on or before

6  November the 17th. And I can imagine that this is a quite

7  voluminous amount of discovery in the case, I have no idea

8  personally how much discovery there is. If I could ask one of

9  the attorneys for the United States to give me some idea of

10  how much discovery was included in that November 10th

11  discovery.

12  MR. FRANKLIN: Judge, we ran into a problem. What we

13  had intended to do was reduce all of -- or put all of the

14  paper documents into an electronic format and get it to the

15  attorneys on a USB hard drive.

16  THE COURT: Okay.

17  MR. FRANKLIN: But the people that we outsourced it

18  to ran into a problem and we had to take it back and redo it.

19  So what we did on November 10th was we moved all of the

20  documentary evidence, approximately a hundred and 80 boxes

21  worth of evidence, we started moving that to our office to

22  make that available for the attorneys to start looking at.

23  Some of the attorneys opted to wait until we put it in

24  electronic format. We promised them that we would have that

25  available for them by Tuesday afternoon. Only one attorney

## Page 7

1  has his copy. We brought the others with us to court today,

2  it's right outside, and we will make that available to them.

3  But it is a two hundred gigabyte USB hard drive. It contains

4  some -- it contains over a million images. And there are

5  approximately 60 --

6  THE COURT: How many images did you say?

7  MR. FRANKLIN: Over a million images, Your Honor.

8  THE COURT: Okay.

9  MR. FRANKLIN: There are also audio cassettes,

10  approximately 70 audio cassettes that we have provided. And

11  the USB hard drive is where the majority of the documents,

12  which will include the transcripts for the audio tapes, it

13  would also include any plea agreements that were entered into

14  with cooperating witnesses in this case. Judge, and I need to

15  back up, Your Honor, and tell the Court that on Thursday, on

16  the 10th, we also made available to defense counsel, we took

17  the FBI 302s and the plea agreements that had been entered

18  into in this case and we put those on a compact disk and made

19  those available so that defense attorneys who wanted to

20  have -- or wanted to get a start on what information we had

21  they could get started.

22  THE COURT: Mr. Franklin, what would be a fair

23  understanding of the date that you would have all of the

24  initial discovery available to each of the Defendants in this

25  case in the form that you would desire for them to receive

## Page 8

1  it?

2  MR. FRANKLIN: Today would be a fair day, Judge. We

3  intend to have all our initial disclosures provided to

4  defense counsel right after this status conference.

5  THE COURT: While we are on the issue of initial

6  disclosure, would each of the Defendants desire additional

7  time from the November 17th deadline contained in the

8  uniform -- or in the order of arraignment? Let me start with

9  the attorneys for Mr. Siegelman.

10  MR. JONES: Your Honor, additional time for

11  reciprocal discovery?

12  THE COURT: Yes.

13  MR. JONES: Yes, sir. A million images, Your Honor,

14  we have looked -- Mr. Pitt went over and looked at the

15  discovery at the U.S. Attorney's office but we are not sure

16  exactly what form the electronic discovery will take. So it's

17  going to take some time just to be able to look through some

18  of that discovery to see what we have, what we need to get,

19  and that sort of thing, so we absolutely need additional

20  time.

21  THE COURT: Would you need longer than the one week

22  that you were originally given?

23  MR. JONES: Yes, sir.

24  THE COURT: How much time would you expect?

25  MR. JONES: Your Honor, I would ask for at least

Page 9

1 three weeks, because in addition to the information that we
2 are getting, we also received a letter that lists some 22
3 witnesses that purport to be expert witnesses. And I assume
4 that we would need to look at some reciprocal discovery with
5 regard to that as well. An expert witness issue may be coming
6 before the Court as well, Your Honor.
7    THE COURT: So you are asking for three weeks. Let
8 me hear from Mr. Hamrick. Are you asking first, Mr. Wise, for
9 additional time?
10    MR. WISE: Yes, sir, I am.
11    THE COURT: And if you are asking for additional
12 time how much time would you like?
13    MR. WISE: Three weeks is fine, Your Honor.
14    THE COURT: Mr. Roberts or attorney on his behalf?
15    MR. MCKNIGHT: We'd ask for the same, Your Honor.
16    THE COURT: Either Mr. Gillis or Mr., is it Maloy?
17    MR. MALOY: Maloy, Your Honor. We would ask for the
18 same on behalf of Mr. Scrushy, Your Honor.
19    THE COURT: Judge Coody, do you see any problems
20 with three weeks? We will have the order of arraignment
21 modified to reflect that the initial discovery is due by the
22 government for the reasons set forth for the delay from the
23 10th to today's date, being November 16th. Reciprocal initial
24 discovery is due from each Defendant on or before three weeks
25 from today's date. Kelli, do you have a calendar?

Page 10

1    THE CLERK: Three weeks from day's date? Would be
2 December the 7th.
3    THE COURT: I'm sorry?
4    THE CLERK: December the 7th would be three weeks
5 from today.
6    THE COURT: Three weeks from today's date will be
7 December the 7th. Is that acceptable on behalf of Mr.
8 Siegelman?
9    MR. JONES: Yes, sir.
10    THE COURT: Mr. Hamrick?
11    MR. WISE: Yes, sir, Your Honor.
12    THE COURT: Mr. Roberts?
13    MR. MCKNIGHT: Yes, sir, Your Honor.
14    THE COURT: Mr. Scrushy?
15    MR. MALOY: Yes, Your Honor.
16    THE COURT: Mr. Franklin, while we are still on you,
17 is there any additional discovery that you expect to be
18 produced by the government for exchange other than the
19 discovery that you have identified this morning?
20    MR. FRANKLIN: Judge, there is one area that I think
21 the Court needs to be aware of. On our USB hard drive we have
22 included documents that we obtained from HealthSouth, the
23 investigation and trial that occurred in Birmingham. All of
24 the information that we have received from the Northern
25 District of Alabama is included on that USB hard drive. There

Page 11

1 are other items that exist in the Northern District of
2 Alabama which we do not intend to use at our trial, but we
3 have spoken with the Northern District and they have told us
4 that if any of these attorneys wish to see the evidence in
5 they used or gathered during their investigation in
6 Birmingham that they would assist us in making arrangements
7 for those attorneys to go up there and go through that
8 evidence. We do not have it in our custody, but we are
9 willing to help any attorney that wants to make arrangements
10 to go up there and see it, we are willing to help them make
11 those arrangements.
12    THE COURT: Who has custody of those documents or
13 that evidence?
14    MR. FRANKLIN: It would be a combination of the U.S.
15 Attorney's office in Birmingham and the FBI office in
16 Birmingham.
17    THE COURT: Should I expect attorneys for Mr.
18 Siegelman to want to see that government's --
19    MR. JONES: Yes, Your Honor I assume so. It's a
20 little bit difficult for us to kind of gauge at this juncture
21 what is up there.
22    THE COURT: We are just brainstorming, nobody is
23 holding anybody's feet to the fire today.
24    MR. JONES: I would assume we would try to do that
25 soon, Your Honor.

Page 12

1    THE COURT: Attorneys for Mr. Hamrick?
2    MR. WISE: Your Honor, at this time I have no reason
3 to believe that any such material deals with Mr. Hamrick, but
4 I certainly reserve the offer that's been made by the
5 government if something comes up to my attention.
6    THE COURT: Mr. Roberts?
7    MR. MCKNIGHT: Judge, I don't have any reason to
8 believe that that evidence has anything to do with my client,
9 but also reserve the right to change that at a later date.
10    THE COURT: Mr. Scrushy?
11    MR. MALOY: Your Honor, on behalf of Mr. Scrushy I
12 would ask the government not to -- not now, not today but at
13 some point perhaps in a pleading to give us some indication
14 of the relevance of the documents in the Northern District
15 because depending on what purpose the government might put
16 those documents to may have some impact on whether we feel
17 that's something we need to review.
18    MR. FRANKLIN: Judge, may I respond?
19    THE COURT: You may.
20    MR. FRANKLIN: As I indicated, we made a request
21 from the Northern District for information we thought might
22 be relevant to our case. Some of it was, some of it was not.
23 But all of the information that we received or gathered from
24 the U.S. Attorney's office in Birmingham has been included on
25 this USB hard drive. So to the extent that there are other

Page 13

1 items in Birmingham, we are now telling the Court we don't
2 intend to use because we don't think any of that evidence is
3 relevant in our case, but we wanted the Court to know and the
4 Defendants to know that it exists, we know it exists, and if
5 they want to go through it and see if there's something up
6 there that they can use, they are welcome to do so. But we
7 are giving them everything that we are aware of that we have.
8        THE COURT: Can you give me an idea of the scope or
9 the size or the quantity of the discovery?
10       MR. FRANKLIN: With respect to what we have now?
11       THE COURT: In Birmingham, that's going to be made
12 available for the Defendants to look at.
13       MR. FRANKLIN: Judge, what I was told by Ms. Martin
14 when I spoke to her was that there was a warehouse full of
15 documentary evidence, that they actually ran out of money
16 trying to copy and make it available to defense counsel
17 during that case. And so what they did was they moved
18 everything they had into a location and they gave defense
19 counsel access to it. I have no idea what they have up there
20 other than what they sent us in response to our request.
21       MR. MALOY: Your Honor, on behalf of Mr. Scrushy
22 that leaves us with a dilemma, if you will.
23       THE COURT: Certainly.
24       MR. MALOY: That we have a huge volume of documents,
25 and I accept the government's representation about their good

Page 14

1 faith. One thing I would ask if the Court could inquire of
2 the government of the documents that came from the Northern
3 District of Alabama that we are receiving on the USB, is the
4 government representing that those are the documents from
5 Birmingham that the government contends are relevant, and
6 also -- to this prosecution, and also are they identified on
7 the USB drive as things that came from the Northern District
8 of Alabama?
9        THE COURT: You can answer that, Mr. Franklin.
10       MR. FRANKLIN: Sure. Yes, Your Honor, we contend
11 that some of the items are relevant and they are identified
12 on the USB hard drive as documents received from HealthSouth.
13       THE COURT: Okay. Does that help you?
14       MR. MALOY: Your Honor, I appreciate the inquiry and
15 I appreciate the response, it helps in some respect, but it
16 still sounds like we are left with the dilemma of having a
17 warehouse full of documents which we are given the
18 opportunity to go and review and make our own decision about
19 whether anything is there that is relevant or exculpatory or
20 anything else. That sounds like a daunting task.
21       THE COURT: In view of the big picture that I want
22 us to focus on today is an idea about when we can look at
23 setting this case for trial, and in doing that we certainly
24 can't set it for trial before you have had an opportunity to
25 look at documents that may or may not be relevant to your

Page 15

1 case or to the defense of your case, so we will just have to
2 make sure that we make note of the problem and move on and
3 see how it's going to affect our decision later.
4        MR. FEAGA: Your Honor, may I speak on behalf of the
5 United States just briefly as to that question? I think I
6 may be able to help them in saying that we don't currently
7 believe that the material that remains in Birmingham is
8 relevant to the presentation that the government will make in
9 this case. As with any case as we begin to engage and begin
10 to litigate in the case we may become aware that something
11 has now become material or relevant. To the extent that that
12 happens we will let them know. And if we get something from
13 up there that we don't currently have on the USB hard drive
14 we will make sure that they are aware that that's something
15 that they should now consider something that we consider
16 relevant. But there may be something up there that something
17 they do may make us believe it's now become relevant so we
18 don't want to categorically say it's not, but right now we
19 don't believe it will be. And if we get anything else from
20 up there we will let them know that we do. So what is on
21 that USB hard drive is what we believe may or may not be
22 relevant to the case, but some of that is not even relevant.
23 We are turning over to them everything that we have acquired
24 during the course of this investigation so that they have it
25 in the event they find that something in there is exculpatory

Page 16

1 that they need that we don't even anticipate. We are trying
2 to make full disclosure is what we are trying to do.
3        THE COURT: Somebody else want to add something
4 before we move on? All right. And to that end I would presume
5 that since it was attached to the order of arraignment that
6 both sides are familiar with the standing order on criminal
7 discovery in the Middle District of Alabama. Are there any
8 questions about the standing order of discovery?
9        MR. JONES: Your Honor, I have one if it please the
10 Court.
11       THE COURT: Okay.
12       MR. JONES: I note in the standing order there is a
13 requirement that 404(b) material also be disclosed, and I was
14 not sure if that was also going to be disclosed as part of
15 the initial disclosures. We would also ask Your Honor that
16 any disclosures made pursuant to 404(b) be placed under seal.
17       THE COURT: You may file it under seal and we can
18 treat it as such upon receipt. Any other questions or
19 concerns about the standing order of discovery?
20       MR. FEAGA: Just in response to that question, we
21 don't currently -- one, we don't have any objection, if we
22 file any 404(b) we will do it under seal. But currently we
23 don't know of any we are going to use but we are reserving
24 the right as we prepare there's a possibility that there
25 could be some and we are right now just still reviewing that

Condense It ™

## Page 17

1 issue. So we are not ruling that out. We will try to make
2 sure that as soon as we know we get that to them in a timely
3 fashion so they have every opportunity to be prepared to
4 address it in this case.
5     THE COURT: Does everybody have the ability to
6 participate with and to use the Case Management Electronic
7 Case Filing in place with the Middle District of Alabama and
8 are there any problems that you have experienced using that
9 in criminal cases?
10     MR. JONES: Your Honor, we have the ability, I
11 haven't seen any problems so far.
12     THE COURT: Judge Coody, do you see any problems
13 with any of --
14     JUDGE COODY: Not that I know of, no.
15     THE COURT: -- anything that's filed under seal not
16 actually remaining under seal with our system?
17     JUDGE COODY: Not that, but I would only caution the
18 lawyers that the process of filing something under seal
19 remains a little bit cumbersome, so before doing it if you
20 have something you need to file under seal let me strongly
21 suggest that you talk to the people in the clerk's office
22 about the proper manner of doing it, which might change over
23 time. So I think any time you want to file something under
24 seal, check with the clerk's office before you do that.
25     THE COURT: It may even behove you to file it in

## Page 18

1 paper form and let it be scanned and be placed the old
2 fashioned way under seal in a paper file.
3     MR. FEAGA: Your Honor, if I may also while the
4 Court is on this topic, and that's why we are here, there's
5 two other things we need to clarify. One is there are eight
6 boxes of material in our office, over in the U.S. Attorney's
7 office that are not on the USB hard drive. They are not on
8 there because we don't believe they are relevant to the case
9 but they were things that were acquired during the course of
10 the investigation. We don't have any current intention to
11 use any of that. If that -- again, if that changes we would
12 let the Defendants know. But those boxes, again, are there
13 similar to the material in Birmingham, if they want to look
14 at it it's there and they can come look at it. We will be
15 happy to identify which eight those are and they are not on
16 the hard drive either. And there is one other thing, Your
17 Honor, and that is --
18     THE COURT: Let's stay on that topic first. I think
19 Rule 16 requires that you make it available for inspection,
20 it doesn't specify how you are to copy it or to account for
21 it if it's available for inspection. But under the
22 circumstances of this case I would request that you do
23 something more than just make it available for inspection and
24 say there it is, look at it if you wish. Maybe have a sign-in
25 sheet or a sheet that acknowledges that they have either had

## Page 19

1 a chance to see it or they have no desire to copy it or have
2 some method of making copies available to the Defendants that
3 wish to have copies of that material, even though you think
4 it's not relevant to your case.
5     MR. FEAGA: Yes, sir. We will make a sign-in log to
6 demonstrate who does and who doesn't come to look at it. But
7 again, it's not on the USB hard drive. We have no current
8 intention of using any of it. We don't believe it's relevant
9 to the case as charged -- as framed. And if that changes we
10 will let them know. One other matter, Your Honor, and that is
11 that we are aware of our continuing duty to disclose. We do
12 have current -- I'm sure there will be things that we will
13 acquire while we are getting ready for trial, and if they
14 have not already been turned over to defense because we
15 didn't have them to turn over as we stand here today, then we
16 will be turning those over. There is something currently in
17 the pipeline that I expect that we will be turning over to
18 them and that is records from DOT that we are awaiting
19 relating to the contracting between the Alabama Department of
20 Transportation and various road contractors regarding the
21 Rainline paint striping process. Those records, when we get
22 them we will turn them over. They just basically are going to
23 reflect how much of this stuff was bought by the state and
24 what projects it was used on, so to give them notice as to
25 what it is. We don't have it yet either.

## Page 20

1     And Your Honor, the Court said earlier on in this
2 process and I just want to make it clear, we are trying to
3 disclose everything to the defense, including material that
4 we may not even recognize as relevant, basically all of it.
5 There may be something as I stand here today that I have
6 forgotten about, but as soon as somebody mentions it we will
7 tell them about it. I don't anticipate that that's happened,
8 I truly believe that I have everything that they are going to
9 need to get ready for this trial other than the things we
10 have discussed already, and if anything like that happens we
11 will let them know and the Court know immediately. But
12 because this investigation, as the Court knows and they
13 obviously all well know too, has lasted as long as it has
14 there's a lot of material and in the last two and a half
15 weeks we have made every effort to gather it together and get
16 it copied and get it to them. If something else pops up we
17 will let them know right away, and hopefully, Your Honor,
18 that won't happen so close to any trial this Court may set
19 that it would create any problem. I really can't conceive of
20 that happening, i.e., that it would be a problem, it might be
21 something we go oh, here's a box of stuff that again we don't
22 think is relevant but here it is. I don't think that's out
23 there but I just want to let the Court know we are doing our
24 best to get everything to them, and I think we have.
25     THE COURT: What about Jencks Act material, are you

Page 21

1  making that available as part of your routine discovery or is
2  that going to be made available separately?
3      MR. FRANKLIN: It's going to be made available
4  separately, Judge. Some Jencks Act material we have already
5  provided on the hard drive, but we intend to provide them
6  with copies of the grand jury transcripts on or before
7  December the 5th, which I think is a Monday, I don't have my
8  calendar in front of me. On or before December 5th we will
9  provide them in electronic format witness testimony, grand
10 jury witness testimony.
11     THE COURT: Of any witness expected to testify at
12 trial?
13     MR. FRANKLIN: That's correct, Your Honor.
14     MR. FEAGA: Your Honor, it goes without saying, I
15 know all these defense attorneys know it and I am sure the
16 Court will include it in any order, that all parties are
17 required to control that information in conformance with the
18 Court's rules and the rules of professional responsibility
19 regarding treatment of evidence in a criminal case. And I
20 know they are all aware of that, but I just feel compelled to
21 put it on the record.
22     MR. WISE: Your Honor, if I may.
23     THE COURT: You may.
24     MR. WISE: Is it my understanding that all parties
25 in the case will get grand jury as well as all Jencks

Page 22

1  material?
2      THE COURT: That's what I understood.
3      MR. FRANKLIN: That's correct, Your Honor.
4      MR. WISE: Thank you, Your Honor.
5      THE COURT: And as Mr. Feaga stated, that material
6  is not subject to dissemination like any other discoverable
7  material. I would remind attorneys of the Rules of
8  Professional Conduct and the type of decorum that we are
9  going to maintain in this proceeding.
10     MR. FEAGA: Your Honor, I do want to add, I didn't
11 want to insinuate in any way that any of these counsel would
12 do that either, I don't expect that any of them would.
13     THE COURT: Nor is the Court, Mr. Feaga, I just want
14 to make sure we are clear about it.
15     MR. JONES: Your Honor, may I bring up two matters
16 with regard to the pretrial order on discovery?
17     THE COURT: You may.
18     MR. JONES: Your Honor, first of all, we received a
19 letter from the government the other day as I mentioned a
20 minute ago that outlined some 22 witnesses that the
21 government purports to put forth as experts. I did not bring
22 the letter today, Judge, and I apologize. But the disclosure
23 was simply the broad parameters of -- and general issues of
24 what the witness will testify to. For instance, I think
25 someone from the Alabama Ethics Commission is listed as

Page 23

1  giving testimony regarding rules and regulations of the
2  ethics commission, but there's nothing in that that contains
3  what I think purports to be complying with the rules about
4  the opinions. I did no -- I would like to inquire if that is
5  going to be furnished to us separately or if the -- if those
6  matters will be included in either 302s or other interview
7  summaries or the grand jury. That was issue number one, Your
8  Honor. And also, there is the order concerning Brady and
9  Gigglio material and I was not -- I know we have been given
10 copies of any plea agreements and promises of immunity, et
11 cetera, but if the government was going to identify any Brady
12 material or if that is something that we are required to
13 simply go through these million documents ourself.
14     THE COURT: Those are several subjects that you have
15 brought up, let's take them up in reverse order. Is there
16 going to be any designation of Brady or Gigglio material from
17 the government other than just the discovery and have the
18 defense be able to figure it out in the best way that they
19 can?
20     MR. FRANKLIN: Judge, we don't believe we have any
21 Brady information, but to the extent that we do we have
22 disclosed what we have to defense counsel. In terms of
23 Gigglio material, we have provided that to defense counsel.
24 We provided the Gigglio material on the compact disk that we
25 gave to them on the 10th. It lists the witnesses who have

Page 24

1  agreements with the government; it lists any matter that they
2  have pled guilty to; it lists any downward departures that
3  they have received. So we provided that information to
4  defense counsel already. That information is also contained
5  on the hard drive, which is going to be duplicated. What
6  information they received on the compact disk has been
7  duplicated onto the hard drive so they can keep it in one.
8      THE COURT: What was your first issue, Mr. Jones?
9      MR. JONES: Your Honor, the other one was with
10 regard to the experts.
11     MR. FEAGA: Your Honor, I was going to deal with
12 that one. One of the things we have done, Your Honor, the
13 reason we listed so many, frankly, we don't have anything
14 right now that would be what we traditionally have always, at
15 least I have, viewed as an expert witness' testimony such as
16 a psychiatrist or psychologist. But we know just in an
17 abundance of caution we have noticed for instance that we may
18 call law enforcement agents to the stand. And we might ask
19 them to testify or tell the defense now to having reviewed a
20 box of records and said -- it could be bank records and they
21 could say I found so many checks this month, so many this
22 month, they add up to this, they add up to that. We don't
23 truly believe that's an expert witness' testimony, but we
24 have seen in the past occasionally a ruling that indicated
25 that a court somewhere may have thought it was.

Page 25

1      And I don't know that this Court has ever done that,
2  but to avoid the argument that if we needed to put a summary
3  witness on, that we had failed to notify them, and that's why
4  the information we gave them is pretty general. Is that, you
5  know, and we haven't really formulated our final trial
6  strategy yet. The focus of these would be witnesses like
7  that, they have the discovery, these witnesses might come in
8  and say I have reviewed this series of bank records and yeah,
9  I found this check and that check in there and here's what
10  the payee says on it and that sort of thing. We just don't
11  want to get caught in the trap of having someone say that was
12  expert testimony. We don't believe it is.
13      Now, with regards to say the ethics commission,
14  generally by and large witnesses like that from state
15  agencies or from governmental agencies we would expect that
16  we might ask them about the procedures for how their agencies
17  are operating, how they normally operate, and did they
18  operate that way in regard to certain facts that may come
19  into evidence in this case. If that's expert testimony, we
20  don't believe it is, but it might be determined to be, we
21  have notified them of that.
22      It is possible, and if we get there, that we have
23  someone who is actually rendering what we traditionally
24  classify as a true expert opinion, which would be -- say we
25  are going to ask the Court to allow evidence in let's say

Page 26

1  from the ethics commission director as to whether or not a
2  given transaction should have been reported under the law.
3  That's the kind of thing that if we get to that point, and we
4  are not there right now, that we would I think turn that over
5  to them if we get something like that, where he is actually
6  rendering an opinion so-to-speak, for what we consider expert
7  testimony. I hope that answers their question. These
8  witnesses I think are really going to be summarizing, to the
9  extent that we use them, and we may not, we just want to be
10  able to do that to summarize exhibits that will be in
11  evidence through the custodians of various records, that sort
12  of thing.
13      THE COURT: Well, I would imagine that in this type
14  of case with the volume of discovery and the volume of
15  documentation and the likelihood of having a large number of
16  witnesses, that we will be very careful about trying to set a
17  pretrial in this case early on and identify things such as
18  disclosure of expert witnesses and cover who would qualify as
19  an expert and who would not qualify as an expert. And I
20  would be in contact with Magistrate Judge Coody and we can
21  help counsel give some guidance to what you should expect.
22      MR. FEAGA: Yes, sir.
23      THE COURT: And while I'm on the topic of the
24  pretrial order I would likely have a pretrial hearing and an
25  order correspondingly at least 45 to 60 days before trial so

Page 27

1  that you could have an idea about an earlier deadline for
2  filing proposed voir dire, jury instructions, motions in
3  limine and then have some time for response before trial,
4  rather than in the typical criminal case the eve of trial. Do
5  you see any problem with that, Judge Coody?
6      JUDGE COODY: Not really.
7      THE COURT: Should the Court expect a motion to
8  sever from any of the Defendants in this case?
9      MR. MALOY: Yes, Your Honor, on behalf of Mr.
10  Scrushy.
11      MR. MCKNIGHT: Yes, Your Honor, on behalf of Mr.
12  Roberts.
13      THE COURT: Let me start with Mr. Maloy on behalf of
14  Mr. Scrushy, how soon would you be in a position to file a
15  motion to sever along with a legal brief?
16      MR. MALOY: Your Honor, I would ask for a date three
17  weeks from today, the same date as the reciprocal discovery,
18  I believe December 7th.
19      THE COURT: Mr. McKnight, is that --
20      MR. MCKNIGHT: Yes, sir, we can meet that date also.
21      MR. WISE: Your Honor, on behalf of Mr. Hamrick,
22  until I have had an opportunity to review the discovery I
23  can't absolutely rule out a motion to sever.
24      THE COURT: Do you think, Mr. Wise, that you would
25  have enough time to review discovery and have a meaningful

Page 28

1  opportunity to prepare a motion to sever within three weeks?
2      MR. WISE: Based on the representations of the
3  United States Government as to what I am getting today, yes,
4  sir, I think that would be fine.
5      THE COURT: All right. I will require any party
6  wishing to file a motion to sever to file its motion along
7  with a corresponding brief in support of your motion no later
8  than December 14th. Because of the holiday schedule would the
9  government like an opportunity to respond to the motion, if
10  any is filed?
11      MR. FRANKLIN: Yes, Your Honor, we would.
12      THE COURT: How long do you think you would need to
13  file a motion or response to the motion, Mr. Franklin?
14      MR. FRANKLIN: One moment, Your Honor. Judge Fuller,
15  we would ask three weeks to respond. We would ask for that
16  amount of time because of the holiday season. If their
17  motions are filed on the 14th, we would ask for three weeks.
18      THE COURT: Response to any motion to sever along
19  with corresponding brief by January the 4th, 2006. And I will
20  allow the moving party one week to file a reply, which will
21  be January the 14th of '06. I wrote down the 7th. The motions
22  and the briefs are to be filed by December 14th, the
23  responses with briefs due by January the 4th, and the replies
24  with any additional documentation by January the 11th. How
25  long does each side expect this case to try? Do you have any

## Page 29

1  idea of that under the circumstances, Mr. Franklin?

2      MR. FRANKLIN: Judge, we believe that we could put

3  our case on in about two weeks.

4      THE COURT: Mr. Jones, how long would you anticipate

5  either the trial or your case in defense on behalf of Mr.

6  Siegelman?

7      MR. JONES: Your Honor, it's so hard for us to gauge

8  at this point. I would be very surprised if the government

9  can put their case on in two weeks unless these cases are

10  severed. Two weeks for each case, that's possible I guess,

11  but with cross-examination from four defense lawyers that may

12  be a little optimistic. I was thinking total, and this is

13  just -- I mean this is just a wild guess, Judge, I would

14  think total four to six weeks, for total, for everyone.

15  That's assuming one trial with all Defendants, Your Honor.

16      THE COURT: Mr. Wise, how long do you anticipate

17  either the case in chief on behalf of Mr. Hamrick or the case

18  as a whole taking to try?

19      MR. WISE: Your Honor, as far as Mr. Hamrick, until

20  I have had an opportunity to review all the discovery it

21  would be nothing but a guess, therefore I have no opinion at

22  this time. But I do agree with Mr. Jones from reading the

23  indictment and the little bit of discovery I have been able

24  to review thus far, I think four to six weeks is reasonable.

25      THE COURT: Mr. McKnight, are you in a position to

## Page 30

1  render any better opinion than what the other two defense

2  counsel have been able to render?

3      MR. MCKNIGHT: No, sir. I would guess that Mr.

4  Roberts' portion of the defense would take three to five

5  days.

6      THE COURT: Mr. Maloy or Mr. Gillis, is there any

7  expectation on behalf of your client as to the length of the

8  defense?

9      MR. MALOY: Your Honor, I can only say I can't

10  disagree with the estimate of four to six weeks, that sounds

11  reasonable with the caveat that it's pretty speculative, but

12  reasonable.

13      THE COURT: Well, obviously I am looking at a

14  special term setting this case for trial. The Speedy Trial

15  Act I think by my calculations begins to run as to three of

16  the Defendants on January the 3rd and maybe to the fourth

17  Defendant on January the 4th. Let me start with the defense

18  and ask if there is a suggested time or month for trial?

19      MR. JONES: Your Honor, that is the dilemma that we

20  have been discussing among ourselves. There are a number of

21  issues, Your Honor.

22      THE COURT: I understand.

23      MR. JONES: Mr. Siegelman is not -- has not filed a

24  written waiver and we will not file a written waiver of the

25  speedy trial rights and we'd like an early setting. I would

## Page 31

1  note for the Court that at least counsel for three of the

2  Defendants and possibly a fourth within a week are also set

3  for trial in front of Judge Propst the first week of April in

4  a public corruption case up there as well. From my client's

5  perspective we'd like to try this case prior to that time. I

6  don't know, Your Honor, candidly if that is something that

7  could also be taken up with Judge Propst. There are a number

8  of lawyers that are assembled and also the lawyers up there

9  would probably not be opposed to some delay in that case, but

10  there are some logistics issues with trying this case at the

11  earliest opportunity, but from Governor Siegelman's

12  standpoint we'd certainly like one at the earliest

13  opportunity.

14      THE COURT: How about Mr. Hamrick?

15      MR. WISE: Your Honor, I am one of the lawyers that

16  Mr. Jones is referring to that's involved in the case in

17  front of Judge Propst in Birmingham which is set I believe

18  April 2nd or April 3rd. Until I look at the discovery, Your

19  Honor, I don't know whether or not my client would be willing

20  to file a waiver of speedy trial. He may want to go ahead

21  depending on what is in discovery. So at this time, Your

22  Honor, I cannot answer your question. I don't know what all

23  is going to be involved as far as the work we will have to do

24  to defend this case until I get it.

25      THE COURT: Mr. Roberts?

## Page 32

1      MR. MCKNIGHT: Judge, I am the lawyer he referred to

2  who may be in that case in Birmingham. We have -- I have

3  obtained and prepared to file today a waiver of the speedy

4  trial on behalf of my client, Mack Roberts. And with the

5  Court's permission will do so at this time.

6      THE COURT: You may approach.

7      MR. MCKNIGHT: (complies)

8      THE COURT: Mr. Scrushy?

9      MR. MALOY: Yes, Your Honor, on behalf of Mr.

10  Scrushy let me first say that one of the lawyers who will be

11  most involved in defending Mr. Scrushy, Mr. Art Leach, who

12  couldn't be here today because he is on trial in Birmingham,

13  is also involved in this specially set April case in

14  Birmingham, so he has that same conflict. Mr. Scrushy's

15  position is that he wants an early trial in this matter. He

16  is not waiving his speedy trial rights. Having said that,

17  Your Honor, we understand that we are asking for the Court's

18  assistance through its rulings in getting this case ready for

19  trial and there's a lot of things that we are asking for that

20  are with the routine operation of the Speedy Trial Act going

21  to stop the clock and cause that 70 days to get spread out

22  with a number of excludable days. From the perspective of

23  when this case could be ready for trial, my opinion is, and I

24  haven't had a chance to discuss this with Mr. Leach because

25  he has been on trial, is that a setting unfortunately about

Page 33

1  the same time as the case in Birmingham of the latter part of
2  March or early part of April would be the earliest practical
3  time to try it given the volume of discovery and other issues
4  pending in this case.
5      THE COURT: Let me hear from the United States.
6      MR. FRANKLIN: Well, Judge, just looking at the
7  schedule that the Court has entered in terms of the motion to
8  sever, and keeping in mind the Speedy Trial Act, that would
9  put us in February at this point, and that's without any
10 other motions being filed. If the Court were to set it in
11 February the United States would be ready to go. We'd be
12 ready to go at whatever time the Court sets this matter.
13     MR. JONES: Your Honor, if I could, and I do agree
14 with Mr. Maloy that all things being equal that a late March
15 or early April setting would be appropriate, it's just that
16 bumping up the Northern District case --
17     THE COURT: I understand. Do counsel find that these
18 types of status conferences helpful if we were to stay
19 diligent as far as maintaining the status of discovery and
20 the status of the cases and identifying any problems having
21 these types of status conferences, do you find that they are
22 helpful?
23     MR. FRANKLIN: The government does, Your Honor.
24     MR. JONES: Your Honor, we certainly would. Knowing
25 we have probably got two or three different lawyers and with

Page 34

1  our schedules you may see a different lawyer each time but we
2  will be consistent.
3      THE COURT: And I will try not to set them without
4  having some purpose behind it, and obviously the next status
5  conference may well be after the motions to sever have been
6  briefed and under submission so that we can take a look at
7  the realistic possibility of a severance and a trial date
8  afterwards. How about other counsel, Mr. McKnight or Mr. Wise
9  or Mr. Gillis or Mr. Maloy, do you find them to be helpful?
10     MR. WISE: Yes, sir, Your Honor.
11     MR. MCKNIGHT: Very helpful, Your Honor.
12     MR. MALOY: I agree, Your Honor.
13     THE COURT: I am not the kind of Judge that just
14 wants you to tell me that you agree with something just
15 because I think it's a good idea, I want you to know up
16 front, if you don't think what I have suggested is a good
17 idea please don't hesitate to say I believe that's a bad
18 idea.
19     MR. MALOY: I genuinely feel that it would be
20 helpful.
21     MR. FEAGA: We genuinely feel that way also, Judge.
22     THE COURT: Well, I have never had the experience
23 that you ever held short on telling me something was a bad
24 idea when, in fact, it turned out to be so.
25     MR. FEAGA: Thank you for that, Your Honor.

Page 35

1      THE COURT: All right. Then I know there are some
2  matters that have been brought to the Court's attention that
3  we might need to take up outside of a public setting here.
4  There was an issue about indictments, issues about protective
5  orders. We covered the Speedy Trial Act. I will take up
6  those issues lastly. Are there any issues that the parties
7  can think of that we need to take up before we take up the
8  two other matters in chambers?
9      MR. JONES: Your Honor, just -- I think it would be
10 more of a matter in chambers but we would like to briefly
11 discuss the recusal order, denying the recusal order of last
12 week, but -- we do plan on appealing that, but the logistics
13 in chambers.
14     THE COURT: Certainly. Anything else from either the
15 United States or any of the Defendants that we need to take
16 up during the status conference before we take these matters
17 up in chambers?
18     MR. FRANKLIN: Nothing from the United States, Your
19 Honor.
20     THE COURT: All right. Then I certainly am aware of
21 the desire and the need to make as many of these hearings
22 public as absolutely possibly can be because of the good name
23 and character of certain persons involved. The Court deems it
24 necessary to recess the remainder of these proceedings to
25 chambers and we will do so immediately following the

Page 36

1  adjournment of this hearing. For the record, I also have a
2  criminal jury trial that is out deliberating and I have been
3  notified that they have a question. If I could take the
4  question at this time and we can decide what we are going to
5  do on both issues.
6      THE MARSHAL: (complies)
7      THE CLERK: (complies)
8      THE COURT: If I could ask the attorneys in case
9  number 05cr-119, United States versus Mr. Siegelman, Hamrick,
10 Roberts and Scrushy to adjourn upstairs to my chambers, my
11 law clerks will follow you up there to make sure that you are
12 taken care of there. We will take up this question and I will
13 meet you upstairs as soon as this issue is resolved. Court
14 will be in recess.
15     (At which time, 11:58 a.m., the hearing was
16 adjourned.)
17         *  *  *  *  *
18     I certify that the foregoing is a correct transcript
19 from the record of proceedings in the above-entitled matter.
20 This the 22nd day of November, 2005.
21
22         _____
              Official Court Reporter
23
24
25