### EXHIBIT A

### DECLARATION UNDER PERJURY OF JAMES K. JENKINS IN SUPPORT OF MOTION TO DISMISS INDICTMENT AND CHALLENGE TO THE JURY SELECTION AND SERVICE PLAN FOR THE MIDDLE DISTRICT OF ALABAMA

1. My name is James K. Jenkins. I am an attorney of record, admitted *pro hac vice*, for Richard M. Scrushy in *United States v. Richard M. Scrushy*, Case No. 2:05-cr-119-F, now pending in the United States District Court for the Middle District of Alabama. I am duly licensed to practice law by the State Bar of Georgia. My offices are located at 75 Fourteenth Street NW, 25th Floor, Atlanta, Georgia 30309.

2. I am filing this sworn statement in support of "Defendant Richard M. Scrushy's Motion to Dismiss and Challenge to the Composition of the Petit Juries in the Middle District of Alabama." (hereinafter "Jury Challenge").

3. In August of 2005, I was retained as lead appellate counsel for Leon Carmichael, Sr. in *United States v. Leon Carmichael, Sr.*, Middle District of Alabama Case 2:03cr259-T. At that time, Mr. Carmichael had been convicted at a jury trial and was awaiting sentencing. There was, and is, a jury challenge pending in Mr. Carmichael's case. The discovery process relating to that jury challenge recently has been completed, and the defendant's intended expert witness, Dr. James Gundlach, is in the process of preparing his final report. Defendant Carmichael's initial brief based on Dr. Gundlach's findings is currently due on February 13, 2006. On October 20, 2005, United States Magistrate Judge Delores R. Boyd, who has been assigned to hear the jury challenge in *Carmichael*, entered a Protective Order relating to disclosure of information obtained from the Court's jury records. (Doc 563.) Pursuant to my representation of Mr.

1

Carmichael relative to his upcoming appeal, I have consulted with trial counsel for Mr. Carmichael, as well as Dr. Gundlach, who has conducted the statistical analysis of the 2001 Jury Wheel for the jury challenge in the *Carmichael* case. Based on these consultations, undersigned counsel is privy to information in addition to the information set forth in this sworn statement, but will not include that information in this sworn statement unless authorized to do so by Magistrate Judge Boyd or this Court. The *Carmichael* jury challenge pertains to the 2001 Qualified Wheel. Dr. Gundlach's analysis will be part of the anticipated February 13, 2006 pleading, and will be available as a public document at that time. Should this Court need any additional supporting information relating to the Jury Challenge in which this sworn statement is being provided prior to that filing, I will provide that information to the Court subject to this Court's direction or clarification of Magistrate Judge Boyd's Protective Order in the *Carmichael* case.

3. Based on information that I have obtained from a number of sources, I have a good faith belief and substantial reasons to conclude that the juries which have been comprised from the 2001 Qualified Wheel and the 2005 Qualified Wheel[1] pursuant to the "Plan of the United States District Court Middle District of Alabama Plan for the Random Selection of Grand and Petit Jurors" (hereinafter "M.D. Jury Plan") systematically under-represent African-Americans.

---

[1] On information and belief, the Middle District began creation of a new Master Jury Wheel in late 2000. Juries were drawn from a Qualified Jury Wheel comprised out of this Master Wheel beginning sometime in 2001. These will be referred to as the "2001 Master Wheel" and the "2001 Qualified Wheel." A similar process was initiated in late 2004, and juries began to be drawn from a Qualified Wheel from this process in approximately August of 2005. These will be referred to as the "2005 Master Wheel" and the "2005 Qualified Wheel."

2

4. In preparation for the filing of this jury challenge, I have retained James Gundlach, Ph.D. Dr. Gundlach is a Professor in the Department of Sociology and Anthropology and Director of Sociology at Auburn University. Dr. Gundlach's areas of expertise are demography and statistics. Dr. Gundlach testified as an expert witness before this Court in a challenge to the jury selection process in the Middle District which resulted in a finding that the M.D. Jury Plan substantially violated the Jury Selection and Service Act of 1968 (hereinafter "JSSA") in *United States v. Clay*, 159 F. Supp. 2d 1357 (M.D. Ala. 2001). Dr. Gundlach is conducting a statistical study of the jury system in this District for the jury challenge currently pending in this Court in the *Carmichael* case. As a result of Dr. Gundlach's extensive work on these two cases, Dr. Gundlach has substantial familiarity with the Middle District of Alabama's jury selection procedures and the results of that selection procedure.

5. I have asked Dr. Gundlach to review the 2000 census records for the counties which comprise the Middle District of Alabama. The Middle District of Alabama is comprised of 23 counties: Autauga, Barbour, Bullock, Butler, Chambers, Chilton, Coffee, Coosa, Covington, Crenshaw, Dale, Elmore, Geneva, Henry, Houston, Lee, Lowndes, Macon, Montgomery, Pike, Randolph, Russell, and Tallapoosa. (M.D. Plan at 1-2, para. 3.) According to the 2000 census, there are 778,124 voting age citizens in the Middle District of Alabama. Of these, 237,061, or approximately 30.466 %, are African-American.

6. Based on these census results, one would expect that the Master Jury Wheel, the Qualified Wheel, and any grand and petit jury panels randomly selected in

compliance with the M.D. Plan and the JSSA would contain approximately 30.466 % African-Americans.

7. The JS-12 report produced on April 9, 2002 indicates that the 2001 Qualified Wheel was comprised of 20.74 percent African-Americans. On information and belief, this 2001 Qualified Wheel has been supplemented on two or more occasions since this JS-12 was generated, but no JS-12 reports have been generated reflecting the composition of the 2001 Qualified as a result of these supplementations. The 2005 Qualified Wheel was created beginning in late 2004. On information and belief, as of the date of this sworn statement, no JS-12 reports have been filed in relation to the 2005 Qualified Wheel.

8. In preparation for this jury challenge, I have retained Montgomery attorney Marion Chartoff as a consultant. Ms. Chartoff is duly admitted to practice before this Court.[2] In that capacity, I have asked Ms. Chartoff to make certain inquiries of Montgomery lawyers who actively practice before this Court.

9. As a result of those inquiries, we have learned that there is a substantial basis to believe that the jury selection process employed in this District frequently results in jury pools and panels which contain substantially less than 30.466 % African-Americans:

    a. A District-wide jury panel summoned on January 28, 2005 contained 61 jurors. Twelve jurors, or 19.67 % were African-American and 49 were Caucasian.[3]

---

[2] Ms. Chartoff is also counsel of record for Mr. Carmichael in *United States v. Leon Carmichael, Sr.*, Case No. 2:03cr259-T.

[3] When summoned, prospective jurors are asked to fill out a supplemental questionnaire which includes identification by race.

4

b. A District-wide panel called on June 6, 2005 for the *Carmichael* trial on June 6, 2005 consisted of 122 members. Twelve jurors, or approximately 9.8 % were African-American.

c. A District-wide pool was summoned on November 7, 2005, which was divided into two panels for two criminal trials in different courtrooms. According to an affidavit filed by trial counsel on November 7, 2005, the panel for the trial in *United States v. Marvin Darby*, Case No. 2:05-cr-00177-A, consisted of 52 jurors. Seven jurors identified themselves as African-American, or 13.46 %, while almost all of the other jurors identified themselves as Caucasian. The second panel from the pool summoned on November 7, 2005 consisted of 72 jurors. Fourteen jurors identified themselves as African-Americans, or 19.44 %, while 57 identified themselves as Caucasian and one identified himself as "other." The total November 7, 2005 pool therefore consisted of 124 jurors, of which approximately 16.94 % were African-American.

10. The forgoing information indicates that the percentage of African-Americans being summoned for District-wide jury pools or panels is repeatedly falling significantly below the anticipated percentage of 30.466 percent African-Americans in the District that one would expect to see among summoned jurors if the Qualified Wheel were properly composed of a fair cross-section of the community and if a random jury selection process was functioning properly and in accordance with the M.D. Plan and the JSSA.

11. As indicated by the decision of this Court in *Clay*, 159 F. Supp. 2d 1357, this District has a history of failing to comply with the JSSA. On information and belief, the

pattern of systematic and significant under-representation of African-Americans that this Court found in *Clay* has not been corrected, and the 2001 Qualified Wheel and the 2005 Qualified Wheel do not fairly represent a cross-section of the community and are therefore in violation of the M.D. Plan, the JSSA, and the Fifth and Sixth Amendments to the United States Constitution.

12. On information and belief, the grand jury or grand juries which returned the initial indictment, the first superseding indictment, and the second superseding indictment against Mr. Scrushy were drawn from the 2001 Qualified Wheel. On information and belief, the jury which will be selected to try Mr. Scrushy's case, currently scheduled to be selected April 19, 2005, will be drawn from the 2005 Qualified Wheel.

I hereby declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this 23rd day of January, 2006.

*/s/ James K. Jenkins*
James K. Jenkins