IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| VS. ) | CRIMINAL NO. 2:05-CR-119-F |
| ) | |
| DON EUGENE SIEGELMAN, ) | |
| PAUL MICHAEL HAMRICK, ) | |
| GARY MACK ROBERTS, and ) | |
| RICHARD M. SCRUSHY. ) | |

### DEFENDANT GARY MACK ROBERTS' MOTION FOR A DAUBERT (or Qualification) HEARING CONCERNING EXPERTS IDENTIFIED BY THE GOVERNMENT OR IN THE ALTERNATIVE MOTION TO EXCLUDE AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Comes now Gary Mack Roberts, a defendant in the above-styled matter, by and through his undersigned counsel and submits this Motion for a Daubert (or Qualification) Hearing Concerning the Experts Identified by the Government or in the alternative Motion to Excluded. As grounds for and in support of his Motion, Roberts states as follows:

### OVERVIEW

The Defense moves this Court to conduct a *Federal Rules of Evidence*, Rule 104(a) hearing in advance of trial to determine the admissibility of expert testimony under the standards set forth by *F.R.E.*, Rule 702 as construed by the United States Supreme Court in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *General Electric Co. v. Joiner*, 522 U.S. 136 (1997); and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999); hereinafter collectively referred to as the Daubert Trilogy.

## FACTUAL BACKGROUND

Pursuant to its standing obligation, the Government, on November 10, 2005, identified seventeen witnesses that it may call as expert witnesses at trial. This identification included the following names and descriptions:[1]

1) **Special Agent Tyler McCurdy, FBI**, may testify to the effects of the execution of a Memorandum of Understanding between the State and Waste Management in July 1999. SA McCurdy's opinion is based on his education, training, experience, knowledge and participation in the investigation of the instant case;

2-5) **Special Agent Keith Baker, FBI/Special Agent Jim Murray, FBI/Investigator Bill Long, AAG's Office/Investigator Jack Brennan AAG's Office**, may testify about transactions and summary reports generated from financial records obtained during the instant case;

6) **Dr. Jay K. Lindley** may testify to matters involving the striping of highways including his report "Evaluation of Profile Pavement Markings";

7) **Don Vaughn** may testify to the Internal Operating Procedures at the Alabama Department of Transportation and the method by which work product moves through the Department, to include contracting, invoicing and disbursement of funds;

8-10) **Alva Lambert/Mark Wilkerson/Jim Sumner** [are identified as only testifying concerning matters unrelated to Defendant Roberts, namely the Certificate of Need Review Board];

11) **David Denton** may testify to general accounting principles, recording of financial data, and management of financial accounts, including those related to construction projects;

---

[1] Several of the identified witnesses had an identical description of what their testimony might include. These witnesses have been combined for the sake of brevity.

12) **Sam Kassouf** may testify to general accounting principles, recording of financial data, and reporting requirements under the Alabama Fair Campaign Practices Act;

13) **Darin Cline** may testify to the rules, regulations, policies, practices, and procedures including fund raising, involved in the political process for state and federal elections;

14) **Wade Hope** may testify to the Internal Operating Procedures of the Alabama Department of Revenue as well as the regulations, rules, and policies pertaining to the taxation and assessment of waste, including hazardous waste, and to the rules, regulations, and requirements under the Alabama Administrative Procedures Act;

15-16) **Dr. Joyce Bigby/Gerald Dial** may testify to the Internal Operating Procedure of the Alabama Legislature as well as the rules, regulations, operations and process for the introduction, negotiation, and passage of legislation in the Alabama Legislature; and

17) **Special Agent Edwin J. Wynn** may testify as a summary witness regarding records pertaining to Department of Transportation product usage.

## ARGUMENT

> The need for full and fair disclosure is especially apparent with respect to scientific proof and the testimony of experts. This sort of evidence is practically impossible for the adversary to test or rebut at trial without an advance opportunity to examine it closely.

Commentary, *ABA Standard Relating to Discovery and Procedure Before Trial* 66 (Approved Draft 1970); see also Paul C. Giannelli, *Criminal Discovery, Scientific Evidence, and DNA,* 44 *Vand.L.Rev.* 791 (1991). In *Kumho* the United States Supreme Court concluded that Daubert's general holding–setting forth the trial judge's gatekeeping obligation–applies not only to testimony based on "scientific" knowledge, but also to testimony based on "technical" and "other

3

specialized" knowledge. *Kumho,* 526 U.S. at 141. To support its conclusion, the Court noted that: (1) Rule 702 did not distinguish between "scientific" knowledge and "technical" or "other specialized knowledge"; (2) Daubert's gatekeeping rationale was not limited to scientific knowledge; and (3) "it would prove difficult, if not impossible, for judges to administer evidentiary rules under which a gatekeeping obligation depended upon a distinction between "scientific" knowledge and "technical" or "other specialized" knowledge. *Id. at* 148. In determining the admissibility of technical or other specialized knowledge, the Court held that the trial court "may consider one or more of the specific factors that Daubert mentioned when doing so will help determine that testimony's reliability. *Id. at 141.* The significance of doing this analysis pre-trial was capsulized in *Brooke Group, Ltd. v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209 (1993), wherein the Supreme Court ruled "when an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable records or facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *Id. at* 242. This is especially important in a case such as the instant action where a lengthy trial is expected and extra precautions are being taken in the voir dire process.

## Daubert Factors

Under Rule 702 of the *Federal Rules of Evidence*, an expert, qualified by knowledge, skill, experience, training, or education, may give opinion testimony about scientific, technical, or other specialized knowledge, it if will assist the trier of fact in determining a fact in issue. The trial judge is the gatekeeper tasked with ensuring that the testimony has merit. In describing the trial judge's screening or "gatekeeping function," the Daubert Court identified a number of factors. First, in evaluating reliability, a judge should determine whether the scientific theory or

4

technique can be and has been tested. *Daubert,* 509 U.S. at 593. Second, whether a theory or technique has been subjected to peer review and publication is "a relevant, though not dispositive, consideration in assessing ... scientific validity." *Id. at* 594. Third, a technique's "known or potential rate of error" is a pertinent factor. *Id.* Fourth, the existence and maintenance of standards controlling the technique's operation" are other indicia of trustworthiness. *Id.* Finally, "general acceptance" remains an important consideration. *Id.*

Following the Daubert Triology, *Federal Rules of Evidence,* Rule 702 was amended in December, 2000 and the following provisions added which are to be analyzed only after the witness has been qualified as an expert: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *F.R.E.* 702. However, with Kuhmo's extension of Daubert to all areas of expert testimony, the following additional factors were added to the advisory committee's notes as also being relevant: 1) whether the underlying research was conducted independently of litigation; 2) whether the expert unjustifiably extrapolated from an accepted premise to an unfounded conclusion; 3) whether the expert has adequately accounted for obvious alternative explanations; 4) whether the expert was as careful as she would be in her profession work outside of paid litigation; and 5) whether the field of expertise claimed by an expert is known to reach reliable results. *Fed. R. Evid.* 702 advisory committee's note (2000). In addition, the note indicates: "[o]ther factors may also be relevant. *See Kuhmo,* 119 S.Ct. 1167, 1176 ("[W]e conclude that the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable)."

## **Importance of Pre-trial Hearing**

Faced with the possibility of seventeen expert witnesses whose findings, protocol and procedures remain a mystery, the Defendant needs a pre-trial determination by this Court pursuant to its gatekeeping function in order to preserve and protect his Constitutional rights. In *United States v. Kelly,* 420 F.2d 26 (2nd Cir. 1969) two New York City narcotics detectives were convicted of engaging in narcotics trafficking. The Government failed to notify the defendants at trial of the specific method by which certain tests had been conducted upon the substances in question. The defendant moved for a one month continuance of the case in order to perform its own testing upon the substances, despite the fact that "no request for the chemical analyses under the government's bill of particulars was ever made." *Id. at* 28. The Second Circuit held:

> While the newness of the test is not itself reason for depriving the jury of its results, and the opportunity to weigh conflicting claims as to its reliability, **fairness requires that adequate notice be given the defense to check the findings and conclusions of the government's experts**. In the light of the testimony of Dr. Jervis, an acknowledged expert in the field, that some three weeks at least were required for testing and evaluation, the failure to disclose the tests well in advance of trial faced the trial judge with an impossible choice, to sanction a month's interruption of a jury trial or deprive the defense of **a fair opportunity to meet this part of the government's evidence**. The determination not to abort the trial, which had already consumed much time and expense, is understandable in the light of the strength of the government's case, but we think in the circumstances here the other choice was the proper one. **The course of the government smacks too much of a trial by ambush, in violation of the spirit of the rules.** A new trial is required, with a fair opportunity for the defense to run its own neutron activation tests of the material to determine the atomic similarity or dissimilarity of the trace elements in the samples.

*United States v. Kelly,* 420 F.2d 26, 29 (2d Cir. 1969) (emphasis added). While the foregoing rationale clearly applies to scientific expert testimony such as Dr. Lindley's it is equally applicable under a *Kuhmo* extension analysis to the other experts. Even though several of the

Government's experts do not appear to be providing scientific testimony, nevertheless, the Defendant should not be let shrouded in darkness about expert testimony that will cover such broad topics as "summary reports generated from financial records" or "general accounting principles" or "fund raising, involved in the political process" or "the Internal Operating Procedure of the Alabama Legislature". Such a course "smacks of too much trial by ambush." If parties are entitled to and regularly receive Daubert hearings in civil cases where merely money is involved, how much more important is it that the gatekeeper perform its function when someone's liberty interest is at stake.

## Defendant's Request and This Court's Task

Based on the Government's initial disclosures it is presumed that the Government intends to call these experts whose opinions are yet undisclosed to render testimony, presumably asserting the defendant's guilt or at least suggestive of some type of inculpatory behavior. Since any expert testimony must meet the foundational requirements before being admissible at trial, the defense requests a hearing be held to determine the substance of the expert's qualifications and to disclose the nature of their testimony. The United States Supreme Court has assigned this gatekeeping duty to the trial courts. Under the Daubert Trilogy, this Court must determine the qualifications of the expert and then ensure that the proposed testimony is both relevant and reliable. The issue of admissibility is a threshold issue which should be determined in advance of trial at a Rule 104(a) hearing. Further, the Government bears the burden of establishing admissibility under the Daubert Trilogy, and that the burden is proof by a preponderance of the evidence. See, *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987). *Daubert* clearly identifies the task before the Court: "The Rules of Evidence–especially Rule 702–do assign to

the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, supra, 509 U.S. at 592. As *Kuhmo* made clear, the gatekeeping function of the trial court applies to both scientific and other expert testimony. When expert testimony of any form is proffered, the role of the court is to insure that junk science and unreliable expert testimony is not presented to the fact finder. The *Daubert* gatekeeping function applies to proffered expert testimony, no matter what form it takes, although the tests to be applied will vary according to the facts of the case.

## CONCLUSION

Counsel for Defendant Mack Roberts, moves this Court pursuant to Rule 702 of the *Federal Rules of Evidence* to conduct a hearing pursuant to Rule 104(a) of the *Federal Rules of Evidence* to determine whether or not the testimony of the seventeen witnesses identified by the Government should be excluded.

Respectfully submitted this the 13th day of February, 2006.

                                    /s/ David McKnight
                                David McKnight
                                Josh Briskman
                                Attorneys for Gary Mack Roberts
                                BAXLEY, DILLARD, DAUPHIN, MCKNIGHT
                                          AND BARCLIFT
                                2008 Third Avenue South
                                Birmingham, AL  35233
                                Telephone: (205)271-1100
                                Fax: (205)271-1108

## CERTIFICATE OF SERVICE

      I hereby certify that on February 13, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                              /s/ David McKnight
                                              Of Counsel