IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | CRIMINAL NO. 2:05-CR-119-F |
| DON EUGENE SIEGELMAN, ) | |
| PAUL MICHAEL HAMRICK, ) | |
| GARY MACK ROBERTS, and ) | |
| RICHARD M. SCRUSHY ) | |

**UNITED STATES' RESPONSE TO DEFENDANTS SIEGELMAN'S AND SCRUSHY'S MOTIONS FOR ENHANCED JURY SELECTION PROCEDURES**

COMES NOW the United States of America, by and through Louis V. Franklin, Sr., Acting United States Attorney for the Middle District of Alabama, and Andrew C. Lourie, Acting Chief of the Public Integrity Section of the Criminal Division of the United States Department of Justice, and hereby files its Response to Defendants Siegelman's and Scrushy's Motions for Enhanced Jury Selection Procedures (hereinafter, the "Motions"). This Court should deny the Motions because Defendants are seeking extraordinary and special treatment to which they are not entitled.[1] No aspect of this case warrants this Court deviating from its customary practice of selecting a jury in a criminal case, which amply protects Defendants' rights under the Sixth Amendment. As grounds for its position, the United States submits the following:

I.   **This Court Should Employ its Standard and Customary Practice of Selecting a Jury in a Criminal Case**

Defendants Siegelman and Scrushy assert that this case is so "unusual" and "far out of the ordinary," Siegelman Mot. at 2; see Scrushy Mot. at 10, that this Court should depart from its

---

[1] This Court has already decided to supplement the standard questionnaire sent to all prospective jurors, Scheduling Order (Jan. 23, 2006), so the Defendants' request for this relief reflected in their Motions has already been granted.

standard and customary practice of selecting a jury in a criminal case and provide them with extraordinary relief. In particular, Defendants beseech this Court to not ask prospective jurors in this case the direct questions always asked of venirepersons in this District and to give them additional peremptory challenges. Siegelman Mot. at 1; Scrushy Mot. at 4. Defendants provide, however, no reason in law or fact for the Court to depart from its customary practices and grant Defendants the extraordinary relief they seek.

Prospective jurors in this District are always expressly and intelligently informed about the general principles of law in a criminal case (e.g., the defendant is presumed to be innocent until the government proves his guilt beyond a reasonable doubt) and their duties as jurors (e.g., maintaining impartiality as to the government and the defendant and following the law as instructed by the court). See United States v. Daniels, 986 F.2d 451, 454 (11th Cir.) (informing the panel of prospective "impartial juror[s]" about the defendants' presumed innocence until proven guilty), superceded on rehearing on other grounds, 5 F.3d 495 (11th Cir. 1993), cert. denied, 511 U.S. 1054 (1994); United States v. Simmons, 961 F.2d 183, 185-86 (11th Cir. 1992) (approving of the trial court's instruction to the venire on the general principles of criminal law and the duties of jurors), cert. denied, 507 U.S. 989 (1993). Defendants, however, seriously question the impartiality of the citizens of the Middle District of Alabama and assert that many venirepersons will mask their partiality if this Court informs them of the fundamental principles of criminal law and their duties as jurors. Siegelman Mot. at 2; Scrushy Mot. at 7. Fortunately, the law, the Court, and the United States do not take such an unfavorable view of prospective jurors in this District and correctly presume that prospective jurors are impartial. See Daniels, 986 F.2d at 454 (noting that prospective jurors are presumed to be impartial); United States v. Khoury, 901 F.2d 948, 955-56 (11th Cir.) (noting that the court must

presume that jurors are impartial), modified on other grounds, 910 F.2d 713 (11th Cir. 1990).

Based on their suspicious views of potential jurors in this case, Defendants ask this Court to tailor voir dire to their benefit, rather than to follow its customary practice. This Court has great discretion in conducting voir dire, Mu'Min v. Virginia, 500 U.S. 415, 422 (1991), to achieve the two-fold purpose of "enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." Id. at 431. See Daniels, 986 F.2d at 454 ("The purpose of voir dire is to ascertain whether potential jurors can render a verdict solely on the basis of evidence presented and the charge of the trial court."). The court achieves these purposes and does not abuse its discretion, when it conducts voir dire in a way to comply with the "essential demands of fairness" – "that is, if it [gives] reasonable assurance to the parties that any prejudice of the potential jurors [will] be discovered." United States v. Nash, 910 F.2d 749, 753 (11th Cir. 1990) (citations and quotation omitted).

Thus, at the heart of voir dire is the need to discover whether a potential juror harbors partiality toward either the government or a defendant. Mu'Min, 500 U.S. at 430 ("Under the constitutional standard . . . the relevant question is not whether the community remembered the case, but whether the jurors had such fixed opinions that they could not judge impartially the guilt of the defendant.") (citations and quotations omitted). The United States submits, and the case law bears out, that the best way to learn whether a particular venireperson is partial is to ask him or her that question directly. United States v. Bennett, 368 F.3d 1343, 1352 (11th Cir. 2004) (approving the district court's general inquiry into prospective jurors' ability to serve), vacated on sentencing issue, 543 U.S. 1110 (2005); United States v. Rhodes, 177 F.3d 963, 966 n.4 (11th Cir. 1999) (noting that a direct question of whether a venireperson could be a "fair and impartial juror" was proper during

voir dire); United States v. Lehder-Rivas, 955 F.2d 1510, 1523 (11th Cir.) (rejecting defendants' argument that the trial court "asked 'conditioning' questions that telegraphed the acceptable answer to the person being questioned"), cert. denied, 506 U.S. 924 (1992); Nash, 910 F.2d at 754 (approving the trial court's asking prospective jurors whether they could be "fair and impartial jurors"). To do otherwise defies logic, runs counter to this Court's customary practice, and injects inefficiencies into, and unnecessarily drags out, the jury selection process.

Defendants' fears of a venireperson answering a question about his impartiality in such a way as to contaminate the entire panel are totally speculative and unfounded, especially since the panel is required to be dismissed only where Defendants can prove "'an express admission of bias, or proof of specific facts showing such a close connection to the circumstances of the case that bias must be presumed.'" Khoury, 901 F.2d at 955 (quoting Ward v. United States, 694 F.2d 654, 665 (11th Cir. 1983)). See United States v. Chastain, 198 F.3d 1338, 1347 (11th Cir. 1999) ("statements by potential jurors that do not constitute 'potential actual prejudice' do not mandate additional voir dire") (citations and quotations omitted), cert. denied, 532 U.S. 996 (2001). In any given case tried in this District, a particular juror may have strong feelings regarding the offense charged (e.g., child pornography, possession and distribution of illegal drugs, possession and dealing in firearms, kidnapping, bank robbery or fraud), certain attributes or characteristics of the accused, or the government. In each case, however, this Court properly informs and educates the venirepersons of the relevant legal principles and their duties and responsibilities, including their obligation to be impartial and to decide the case solely on the evidence presented during the trial. This case should not be treated any differently.

Defendants claim they deserve special treatment because they are public figures and this case

has received pretrial publicity. Siegelman Mot. at 2; Scrushy Mot. at 2. "Defendants[, however,] are not in a good position to complain of the effect of pretrial publicity that they actively sought and cultivated." United States v. Montgomery, 772 F.2d 733, 736 (11th Cir. 1985). Like in Montgomery, Defendants have purposefully discussed this case with the media and sought to educate the citizens of this District about their opinion of the charges against them. They cannot now complain that their efforts have been successful and that persons in this District now know something about the case. Importantly, "'[i]t is not required that the jurors be totally ignorant of the facts and issues involved'" in a case. Mu'Min, 500 U.S. at 430 (quoting Irvin v. Dowd, 366 U.S. 717, 722 (1961)). "Rather, 'it is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.'" Montgomery, 772 F.2d at 735 (quoting Irvin, 366 U.S. at 723). Defendants have done nothing but attempt to show that their efforts to publicize this case have been successful and in no way have rebutted the presumption of impartiality applied to prospective jurors in this District. Consequently, this Court should reject Defendants' request for a special voir dire process and use its standard and customary voir dire procedure.

Though the United States contends that the use of this Court's customary practice in jury selection will in no way prejudice Defendants, the Eleventh Circuit has provided guidance for conducting voir dire in highly publicized cases. "In cases involving extensive publicity, this Circuit has expressed a preference for an individual voir dire conducted by the trial court outside the presence of prospective jurors." Lehder-Rivas, 955 F.2d at 1523. In Lehder-Rivas, the Eleventh Circuit approved of the district court's collective questioning of the venire followed by individual voir dire outside the presence of prospective jurors. Id. The district court has discretion to permit the attorneys representing the parties to thereafter ask follow-up questions of the prospective juror,

id., or submit particular questions to the court and have the judge ask the follow-up questions he deems proper, Montgomery, 772 F.2d at 735. See Fed. R. Crim. P. 24(a)(2). The standard practice in this District is for the parties to submit proposed voir dire questions to the Court approximately two weeks before jury selection and for the Court to select the questions it will pose to the venire.[2] The United States is aware of no reason to depart from that standard practice in this case,[3] though ultimately the decision rest with the discretion of the district judge who sits in the locale and can bring "his own perception of the depth and extent of news stories that might influence a juror." Mu'Min, 500 U.S. at 427.

Relatedly, under either system of individual voir dire, Defendants have no constitutional right to quiz prospective jurors about the content of any media report about this case that they have seen, read, or heard. Id. at 425. Rather, the critical questions are whether the prospective juror has formed an opinion about Defendants' guilt, or whether the information has affected his ability to judge Defendants solely on the basis of the evidence presented at trial. Id. at 428.

Finally, Defendants petition this Court to grant them special treatment by providing them with at least two additional peremptory challenges. Siegelman Mot. at 2; Scrushy Mot. at 4. Defendants once again claim that they deserve this special treatment because they have thrust themselves into the public's conscience, including the political arena. Siegelman Mot. at 2; Scrushy Mot. at 9. Though the United States submits that Defendants are not entitled to this extraordinary

---

[2]Though on information and belief the United States does not consider it to be the standard practice, the government is aware that in certain instances District Judges of this Court have permitted attorneys to question individual members of the venire.

[3]This Court has already ordered the parties to submit proposed voir dire questions by April 3, 2006. Order (Jan. 23, 2006).

-6-

relief because they are public figures, the government, upon information and belief, notes that the standard practice in this District is to grant additional peremptory challenges in multi-defendant cases. Federal Rule Criminal Procedure 24 provides the United States with six and Defendants jointly with ten peremptory challenges in this case since it involves felony offenses. Fed. R. Crim. P. 24(b)(2). In multi-defendant cases in this District, this Court customarily grants the defendants, as a group, additional peremptory challenges and then permits the defendants to decide how to use their total number of peremptory challenges, either jointly or separately. For example, if this Court decides to grant Defendants two additional peremptory challenges, then Defendants as a group would have twelve peremptory challenges that they can then divide up among themselves (e.g., three strikes per Defendant) or use collectively. See United States v. Amer, 824 F.2d 906, 907 (11th Cir. 1987) (per curiam) (holding that a defendant does not have an entitlement to "ten peremptory challenges of his own" in a multi-defendant case) (emphasis in original), cert. denied, 484 U.S. 1068 (1988). Pursuant to its standard practice, this Court will also grant the United States additional peremptory challenges if it awards additional challenges to the defendants. See Fed. R. Crim. P. 24, Advisory Committee Notes, 2002 Amendments (noting that if the trial court awards additional peremptory challenges to the defendants, then "the prosecution may request additional challenges . . . not to exceed the total number available to the defendants jointly"). This District employs this practice though, in every multi-defendant case, the individual defendants may have divergent interests and attitudes toward any given prospective juror. Defendants have not provided any persuasive reason for this Court to deviate from its standard practice.

## II.  Conclusion

This case does not warrant a departure from the customary jury selection process this Court normally employs in multi-defendant cases. Though public figures, Defendants Siegelman and Scrushy are standing trial for criminal offenses routinely charged in other white collar and public corruption cases in this District. Defendants are entitled to an impartial jury, not one selected via extraordinary means. Like in other cases, this Court's customary practice of selecting a jury will protect Defendants' full panoply of constitutional and statutory rights. Granting Defendants the special treatment they request will only serve to waste judicial resources and prolong the jury selection proceeding. Consequently, the Motions should be denied.[4]

---

[4] Notably, through the use of an enhanced jury questionnaire, judge-directed voir dire with brief follow-up questioning by the attorneys, the district judge presiding over the currently ongoing trial of former Enron executives Ken Lay and Jeffery Skilling, which involves issues much more complex and has been the subject of far greater pretrial publicity than this case, selected a jury in a single day. See Alexei Barrionuevo, Enron Jury Chosen in First Day, Setting Stage for Opening Arguments, N.Y. Times, Sec. C at 1 (Jan. 31, 2006).

Respectfully submitted this the 27th day of February, 2006

| | |
|---|---|
| LOUIS V. FRANKLIN, SR.<br>ACTING UNITED STATES ATTORNEY | ANDREW C. LOURIE<br>ACTING CHIEF, PUBLIC INTEGRITY SECTION |
| /s/ Louis V. Franklin, Sr.<br>Acting United States Attorney<br>One Court Square, Suite 201<br>Montgomery, AL 36104<br>Phone: (334)223-7280<br>Fax:    (334)223-7560<br>Email: louis.franklin@usdoj.gov | /s/Richard C. Pilger<br>Department of Justice, Criminal Division<br>Public Integrity Section<br>10th & Constitution Ave, NW<br>Bond Building - 12th Floor<br>Washington, DC 20530<br>Phone: (202)514-1412<br>Fax:    (202)514-3003<br>Email: richard.pilger@usdoj.gov |
| /s/ J.B. Perrine<br>Assistant United States Attorney<br>One Court Square, Suite 201<br>Montgomery, AL 36104<br>Phone: (334)223-7280<br>Fax:    (334)223-7135<br>Email: jb.perrine@usdoj.gov<br>ASB-9077-E31J | |
| /s/ Jennifer Garrett<br>Special Assistant United States Attorney<br>Assistant Attorney General<br>Office the Attorney General<br>11 S. Union<br>Montgomery, AL 36130<br>Phone: (334)353-8494<br>Fax:    (334)242-4890<br>Email: jgarrett@ago.state.al.us<br>ASB-4600-T77J | |
| /s/ Stephen P. Feaga<br>Assistant United States Attorney<br>One Court Square, Suite 201<br>Montgomery, AL 36104<br>Phone: (334)223-7280<br>Fax:    (334)223-7560<br>Email: steve.feaga@usdoj.gov<br>ASB-7374A60S | |

/s/ Joseph L. Fitzpatrick, Jr. Special Assistant
United States Attorney
Assistant Attorney General
Office of the Attorney General
11 S. Union
Montgomery, AL 36130
Phone: (334)353-4839
Fax:    (334)242-4890
Email: j.fitzpatrick@ago.al.state.us

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | CRIMINAL NO. 2:05-CR-119-F |
| DON EUGENE SIEGELMAN, | ) | |
| PAUL MICHAEL HAMRICK, | ) | |
| GARY MACK ROBERTS, and | ) | |
| RICHARD M. SCRUSHY | ) | |

### CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Respectfully submitted,

LOUIS V. FRANKLIN, SR.
ACTING UNITED STATES ATTORNEY

/s/ J.B. Perrine
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax:   (334)223-7135
Email: jb.perrine@usdoj.gov
ASB-9077-E31J