## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | **CRIMINAL NO. 2:05-CR-119-MEF** |
| DON EUGENE SIEGELMAN | ) | |
| PAUL MICHAEL HAMRICK | ) | |
| GARY MACK ROBERTS, and | ) | |
| RICHARD M. SCRUSHY. | ) | |

### UNITED STATES' PROPOSED JURY INSTRUCTIONS

COMES NOW the United States of America, by and through Louis V. Franklin, Sr., Acting

United States Attorney for the Middle District of Alabama, and Andrew C. Lourie, Acting Chief of

the Public Integrity Section of the Criminal Division of the United States Department of Justice, and

hereby respectfully requests that the following Jury Instructions be given to the jury in the above-

styled case.

Respectfully submitted this the 3rd day of April, 2006.

UNITED STATES' PROPOSED JURY INSTRUCTION NO. 1

Eleventh Circuit Pattern Jury Instructions, Criminal

Face Page – Introduction (Modified by United States)

**IN THE UNITED STATES DISTRICT COURT FOR**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CRIMINAL NO. 2:05-CR-119-MEF** |
| **DON EUGENE SIEGELMAN** | ) | |
| **PAUL MICHAEL HAMRICK** | ) | |
| **GARY MACK ROBERTS, and** | ) | |
| **RICHARD M. SCRUSHY.** | ) | |

COURT'S INSTRUCTIONS TO THE JURY

Members of the Jury:

It is now my duty to instruct you on the rules of law that you must follow and apply in deciding this case. When I have finished you will go to the jury room and begin your discussions - - what we call your deliberations.

It will be your duty to decide whether the Government has proved beyond a reasonable doubt the specific facts necessary to find each Defendant guilty of the particular crimes charged against him in the indictment.

UNITED STATES' PROPOSED JURY INSTRUCTION NO. 2

Eleventh Circuit Pattern Jury Instructions, Criminal

Basic Instruction No. 2.2

## DUTY TO FOLLOW INSTRUCTIONS
## PRESUMPTION OF INNOCENCE
## (WHEN ANY DEFENDANT DOES NOT TESTIFY)

You must make your decision only on the basis of the testimony and other evidence presented here during the trial; and you must not be influenced in any way by either sympathy or prejudice for or against any Defendant or the Government.

You must also follow the law as I explain it to you whether you agree with that law or not; and you must follow all of my instructions as a whole. You may not single out, or disregard, any of the Court's instructions on the law.

The indictment or formal charge against any Defendant is not evidence of guilt. Indeed, each Defendant is presumed by the law to be innocent. The law does not require a Defendant to prove his innocence or to produce any evidence at all; and if a Defendant elects not to testify, you cannot consider that in any way during your deliberations. The Government has the burden of proving a Defendant guilty beyond a reasonable doubt, and if it fails to do so you must find that Defendant not guilty.

3

UNITED STATES' PROPOSED JURY INSTRUCTION NO. 3

Eleventh Circuit Pattern Jury Instructions, Criminal

Basic Instruction No. 3

## DEFINITION OF REASONABLE DOUBT

Thus, while the Government's burden of proof is a strict or heavy burden, it is not necessary that a Defendant's guilt be proved beyond all possible doubt. It is only required that the Government's proof exclude any "reasonable doubt" concerning a Defendant's guilt.

A "reasonable doubt" is a real doubt, based upon reason and common sense after careful and impartial consideration of all the evidence in the case.

Proof beyond a reasonable doubt, therefore, is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs. If you are convinced that a Defendant has been proved guilty beyond a reasonable doubt, say so. If you are not convinced, say so.

UNITED STATES' PROPOSED JURY INSTRUCTION NO. 4

Eleventh Circuit Pattern Jury Instructions, Criminal

Basic Instruction No. 4.2

## CONSIDERATION OF THE EVIDENCE, DIRECT AND CIRCUMSTANTIAL -- ARGUMENT OF COUNSEL AND COMMENTS BY THE COURT

As I said earlier, you must consider only the evidence that I have admitted in the case. The term "evidence" includes the testimony of the witnesses and the exhibits admitted in the record. Remember that anything the lawyers say is not evidence in the case. It is your own recollection and interpretation of the evidence that controls. What the lawyers say is not binding upon you. Also, you should not assume from anything I may have said that I have any opinion concerning any of the issues in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision concerning the facts.

In considering the evidence you may make deductions and reach conclusions which reason and common sense lead you to make; and you should not be concerned about whether the evidence is direct or circumstantial. "Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eye witness. "Circumstantial evidence" is proof of a chain of facts and circumstances tending to prove, or disprove, any fact in dispute. The law makes no distinction between the weight you may give to either direct or circumstantial evidence.

UNITED STATES' PROPOSED JURY INSTRUCTION NO. 5

Eleventh Circuit Pattern Jury Instructions, Criminal

Basic Instruction No. 5

CREDIBILITY OF WITNESSES

Now, in saying that you must <u>consider</u> all of the evidence, I do not mean that you must <u>accept</u> all of the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. Also, the number of witnesses testifying concerning any particular dispute is not controlling.

In deciding whether you believe or do not believe any witness I suggest that you ask yourself a few questions: Did the witness impress you as one who was telling the truth? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case? Did the witness seem to have a good memory? Did the witness have the opportunity and ability to observe accurately the things he or she testified about? Did the witness appear to understand the questions clearly and answer them directly? Did the witness's testimony differ from other testimony or other evidence?

UNITED STATES' PROPOSED JURY INSTRUCTION NO. 6

Eleventh Circuit Pattern Jury Instructions, Criminal

Basic Instruction No. 6.5

IMPEACHMENT
INCONSISTENT STATEMENT AND FELONY CONVICTION
(DEFENDANT TESTIFIES WITH NO FELONY CONVICTION)

You should also ask yourself whether there was evidence tending to prove that a witness testified falsely concerning some important fact; or, whether there was evidence that at some other time a witness said or did something, or failed to say or do something, which was different from the testimony the witness gave before you during the trial.

The fact that a witness has been convicted of a felony offense, or a crime involving dishonesty or false statement, is another factor you may consider in deciding whether you believe that witness.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether it was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

A Defendant has a right not to testify. If a Defendant does testify, however, you should decide in the same way as that of any other witness whether you believe that Defendant's testimony.

7

UNITED STATES' PROPOSED JURY INSTRUCTION NO. 7

## DEFENDANT'S TESTIMONY: EFFECT OF STAKE IN THE OUTCOME
(IF APPLICABLE)

Defendant _____ testified in his own behalf.  You may be wondering if the personal

stake that he has in the outcome of this trial should cause you to consider his testimony any

differently from that of other witnesses.  It is proper for you to consider his personal stake in the

outcome of the trial when you decide whether or not you believe his testimony.  But remember that a

Defendant is presumed innocent unless the Government proves, beyond a reasonable doubt, that he is

guilty.  The fact that he has been charged with these crimes is no reason by itself for you not to

believe what he said.

UNITED STATES' PROPOSED JURY INSTRUCTION NO. 8

Eleventh Circuit Pattern Jury Instructions, Criminal

Basic Instruction No. 7

## EXPERT WITNESSES

When knowledge of a technical subject matter might be helpful to the jury, a person having special training or experience in that technical field is permitted to state an opinion concerning those technical matters.

Merely because such a witness has expressed an opinion, however, does not mean that you must accept that opinion. The same as with any other witness, it is up to you to decide whether to rely upon it.

UNITED STATES' PROPOSED JURY INSTRUCTION NO. 9

Eleventh Circuit Pattern Jury Instructions, Criminal

Special Instruction No. 1.1

## ACCOMPLICE - - IMMUNITY

The testimony of some witnesses must be considered with more caution than the testimony of other witnesses.

For example, a witness who has been promised that he or she will not be charged or prosecuted, or a witness who hopes to gain more favorable treatment in his or her own case, may have a reason to make a false statement because the witness wants to strike a good bargain with the Government.

So, while a witness of that kind may be entirely truthful when testifying, you should consider that testimony with more caution than the testimony of other witnesses.

UNITED STATES' PROPOSED JURY INSTRUCTION NO. 10

Eleventh Circuit Pattern Jury Instructions, Criminal

Special Instruction No. 5

## NOTETAKING

In this case you have been permitted to take notes during the course of the trial, and most of you - - perhaps all of you - - have taken advantage of that opportunity and have made notes from time to time.

You will have your notes available to you during your deliberations, but you should make use of them only as an aid to your memory. In other words, you should not give your notes any precedence over your independent recollection of the evidence or the lack of evidence; and neither should you be unduly influenced by the notes of other jurors.

I emphasize that notes are not entitled to any greater weight than the memory or impression of each juror as to what the testimony may have been.

UNITED STATES' PROPOSED JURY INSTRUCTION NO. 11

Eleventh Circuit Pattern Jury Instructions, Criminal

Special Instruction No. 7

### AIDING AND ABETTING (AGENCY)
### 18 U.S.C. § 2

The guilt of a Defendant in a criminal case may be proved without evidence that the Defendant personally did every act involved in the commission of the crime charged. The law recognizes that, ordinarily, anything a person can do for one's self may also be accomplished through direction of another person as an agent, or by acting together with, or under the direction of, another person or persons in a joint effort.

So, if the acts or conduct of an agent, employee or other associate of a Defendant are willfully directed or authorized by that Defendant, or if a Defendant aids and abets another person by willfully joining together with that person in the commission of a crime, then the law holds that Defendant responsible for the conduct of that other person just as though that Defendant had personally engaged in such conduct.

However, before any Defendant can be held criminally responsible for the conduct of others it is necessary that that Defendant willfully associate in some way with the crime, and willfully participate in it. Mere presence at the scene of a crime and even knowledge that a crime is being committed are not sufficient to establish that a Defendant either directed or aided and abetted the crime. You must find beyond a reasonable doubt that the Defendant was a willful participant and not merely a knowing spectator.

UNITED STATES' PROPOSED JURY INSTRUCTION NO. 12

Eleventh Circuit Pattern Jury Instructions, Criminal

Basic Instruction No. 8 (Modified by the United States)

## INTRODUCTION TO OFFENSE INSTRUCTIONS
## (IN CONSPIRACY CASES)

At this time I will explain the indictment which charges 34 separate offenses called "counts." I will not read it to you at length because you will be given a copy of the indictment for reference during your deliberations.

Defendant Siegelman is charged in all counts except Count 15. He is charged with having committed the following offenses: RICO conspiracy (Count One), substantive RICO (Count Two), Federal Funds Bribery (Counts Three and Four), Conspiracy (Count Five), Honest Services Mail Fraud (Counts Six through Twelve and Counts Eighteen through Thirty-three), Honest Services Wire Fraud (Counts Thirteen and Fourteen), Obstruction of Justice (Counts Sixteen and Seventeen), and Hobbs Act Extortion under color of official right and by fear of economic harm (Count Thirty-four). Defendant Hamrick is charged with RICO Conspiracy (Count One), substantive RICO (Count Two), Honest Services Mail Fraud (Counts Ten through Twelve), Honest Services Wire Fraud (Counts Thirteen and Fourteen), and Obstruction of Justice (Count Fifteen). Defendant Roberts is charged with Honest Services Mail Fraud (Counts 18 through 33). Defendant Scrushy is charged with Federal Funds Bribery (Counts Three and Four), Conspiracy (Count Five), and Honest Services Mail Fraud (Counts Six through Nine).

All the Counts I have just listed, except Counts One and Five, charge the commission of what are referred to as substantive offenses. Counts One and Five each charge a conspiracy rather than a substantive offense. More particularly, Count One charges Defendants Siegelman and Hamrick with

a RICO Conspiracy in violation of 18 U.S.C. § 1962(d), namely, that Defendants Siegelman and Hamrick knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of an enterprise through a pattern of racketeering activity. Count Five charges Defendants Siegelman and Scrushy with a general unlawful Conspiracy in violation of 18 U.S.C. § 371, namely, that Defendants Siegelman and Scrushy knowingly and willfully conspired together to commit honest services mail fraud by devising and intending to devise a scheme and artifice to defraud and deprive the State of Alabama of its right to the honest and faithful services of Siegelman and Scrushy in their capacities as Governor of the State of Alabama and a member of the Alabama Certificate of Need Board (hereinafter, the "CON Board"), respectively, as well as other members of the CON Board, performed free from deceit, favoritism, bias, self-enrichment, self-dealing, and conflict of interest concerning the CON Board to give HealthSouth membership on and representation at the CON Board and to allow HealthSouth to exert influence over the CON Board. In addition, Racketeering Act 2(a), a predicate offense under the substantive RICO offense, charges Defendant Siegelman with conspiracy to commit extortion under color of official right.

So, in the indictment, three different conspiracies are charged, each one with a different objective. Defendant Siegelman is charged in all three conspiracies, while Defendant Hamrick is only charged in the RICO conspiracy, and Defendant Scrushy is only charged in the conspiracy of Count Five. The essence of each of these conspiracies is that the conspirators came to an agreement or understanding to accomplish a common and unlawful plan, as charged in the indictment.

I will explain the law governing all of these offenses in a moment.

14

UNITED STATES' REQUESTED JURY INSTRUCTION NO. 13

## CONJUNCTIVE CHARGING

"[W]here an indictment charges in the conjunctive several means of violating a statute, a conviction may be obtained on proof of only one of the means, and accordingly the jury instruction may be properly framed in the disjunctive." [United States v. Simpson, 228 F.3d 1294, 1300 (11th Cir. 2000).]

In other words, where the word "and" is used in the indictment to charge a Defendant with different means by which the crime was committed, the Government need only prove one of those means beyond a reasonable doubt to convict the Defendant. For example, in Count Three of the indictment, the Government need only prove beyond a reasonable doubt that Defendant Siegelman corruptly solicited or demanded or accepted or agreed to accept $500,000 from Defendant Scrushy, intending to be influenced or rewarded in connection with the appointment of Defendant Scrushy to the CON Board.

UNITED STATES' PROPOSED JURY INSTRUCTION NO. 14

Eleventh Circuit Pattern Jury Instructions, Criminal

Basic Instruction No. 9.1

### ON OR ABOUT - - KNOWINGLY - - WILLFULLY

You will note that the indictment charges that the offenses were committed "on or about" a certain date. The Government does not have to prove with certainty the exact date of an alleged offense. It is sufficient if the Government proves beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged.

The word "knowingly," as that term is used in the indictment or in these instructions, means that the act was done voluntarily and intentionally and not because of mistake or accident.

The word "willfully," as that term is used in the indictment or in these instructions, means that the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is with bad purpose either to disobey or disregard the law.

16

UNITED STATES' PROPOSED JURY INSTRUCTION NO. 15

Eleventh Circuit Pattern Jury Instructions, Criminal

Basic Instruction No. 10.4 (Modified by the United States)

CAUTION - - PUNISHMENT
(MULTIPLE DEFENDANTS - - MULTIPLE COUNTS)

A separate crime or offense is charged against one or more of the Defendants in each count of the indictment. Each charge, and the evidence pertaining to it, should be considered separately. Also, the case of each Defendant should be considered separately and individually. The fact that you may find any one or more of the Defendants guilty or not guilty of any of the offenses charged should not affect your verdict as to any other offense or any other Defendant.

I caution you, members of the Jury, that you are here to determine from the evidence in this case whether each Defendant is guilty or not guilty. Each Defendant is on trial only for the specific offense alleged in the indictment against him.

Also, the question of punishment should never be considered by the jury in any way in deciding the case. If a Defendant is convicted the matter of punishment is for the Judge alone to determine later.

17

UNITED STATES' PROPOSED JURY INSTRUCTION NO. 16

Eleventh Circuit Pattern Jury Instructions, Criminal

Offense Instruction No. 71.2 (Modified by the United States)

### RICO -- CONSPIRACY OFFENSE
### 18 U.S.C. § 1962(d)

Title 18, United States Code, Section 1962(c), makes it a Federal crime or offense for anyone who is associated with an "enterprise" engaged in, or the activities of which affect, interstate commerce, to participate in the conduct of the affairs of the enterprise through a "pattern of racketeering activity."

The meaning of these terms and an explanation of what must be proved in order to establish that offense, is discussed in that part of the instructions covering Count Two of the indictment.

However, Defendants Siegelman and Hamrick, who are named in Count One of the indictment -- the RICO conspiracy count -- are not charged in Count One with violating Section 1962(c); rather, they are charged with knowingly and willfully conspiring to violate Section 1962(c), the alleged conspiracy itself being a separate crime or offense in violation of Section 1962(d).

So, under Section 1962(d), a "conspiracy" is a combination or agreement of two or more persons to join together to attempt to accomplish an offense that would be in violation of Section 1962(c) as elsewhere defined in these instructions. It is a kind of "partnership in criminal purposes" in which each member becomes the agent of every other member.

The evidence in the case need not show that the alleged members of the conspiracy entered into any express or formal agreement; or that they directly discussed between themselves the details of the scheme and its purpose, or the precise ways in which the purpose was to be accomplished. Neither must it be proved that all of the persons charged to have been members of the conspiracy

were such, nor that the alleged conspirators actually succeeded in accomplishing their unlawful

objectives.

What the evidence in the case must show beyond a reasonable doubt is:

First: That two or more persons, in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, namely, to engage in a "pattern of racketeering activity" as charged in the indictment; and

Second: That the Defendant knowingly and willfully became a member of such conspiracy; and

Third: That at the time the Defendant knowingly and willfully agreed to join in such conspiracy, the Defendant did so with the specific intent either to personally participate in the commission of two "predicate offenses," as elsewhere defined in these instructions, or that the Defendant specifically intended to otherwise participate in the affairs of the "enterprise" with the knowledge and intent that other members of the conspiracy would commit two or more "predicate offenses" as a part of a "pattern of racketeering activity."

A person may become a member of a conspiracy without full knowledge of all of the details

of the unlawful scheme or the names and identities of all of the other alleged conspirators. So, if a

Defendant has an understanding of the unlawful nature of a plan and knowingly and willfully joins in

that plan on one occasion, that is sufficient to convict for conspiracy even though the Defendant did

not participate before, and even though the Defendant played only a minor part.

Of course, mere presence at the scene of a transaction or event, or the mere fact that certain

persons may have associated with each other, and may have assembled together and discussed

common aims and interests, does not, standing alone, establish proof of the existence of a

conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way

which advances some purpose of a conspiracy, does not thereby become a conspirator.

The RICO conspiracy offense charged in Count One is a distinct offense from the RICO

substantive count charged in Count Two, and there are several significant differences. First, as I will

instruct you, to convict a Defendant on a RICO substantive offense as charged in Count Two, the

19

Government must prove that the Defendant personally committed, caused, or aided and abetted at least two of the charged racketeering acts. By contrast, to convict a Defendant on the RICO conspiracy offense charged in Count One, the Government is <u>not</u> required to prove that any Defendant or any co-conspirator actually committed, caused, or aided and abetted any racketeering act. Moreover, it is not necessary, in order to convict a Defendant of a charge of conspiracy, that the objectives or purposes of the conspiracy, whatever they may be, have been achieved or accomplished. The ultimate success or failure of the conspiracy is irrelevant. Rather, the conspiratorial agreement to commit a RICO offense is the essential aspect of a RICO conspiracy offense, as I will explain shortly in more detail.

Another important difference is that unlike the requirements to convict a Defendant on a RICO substantive offense as alleged in Count Two, the Government <u>is not</u> required to prove that the alleged enterprise was <u>actually</u> established, that the Defendant was <u>actually</u> employed by or associated with the enterprise, or that the enterprise was <u>actually</u> engaged in, or its activities <u>actually</u> affected, interstate or foreign commerce. Rather, because the agreement to commit a RICO offense is the essence of a RICO conspiracy offense, the Government need only prove that if the conspiracy offense were completed as contemplated, the enterprise <u>would be</u> established, that the Defendant <u>would be</u> employed by or associated with the enterprise, and that the enterprise <u>would be</u> engaged in, or its activities <u>would</u> affect, interstate or foreign commerce.

Finally, another important distinction is that, as I will instruct you, to convict a Defendant of a substantive RICO offense, the Government must prove that the Defendant personally participated in the operation or management of the enterprise. However, such proof is not required to convict a Defendant of a RICO conspiracy offense, as charged in Count One. Rather, a Defendant may be convicted of a RICO conspiracy offense even if he did not personally participate in the operation or

management of the enterprise when the evidence establishes that the Defendant knowingly agreed to facilitate a scheme which, if completed, would constitute a RICO substantive violation involving at least one conspirator who would participate in the operation or management of the enterprise.

As I previously stated, the agreement to commit a RICO offense is the essential aspect of a RICO conspiracy offense. The jury may find that a Defendant has entered into the requisite agreement to violate RICO when the Government has proven beyond a reasonable doubt that the Defendant agreed with at least one other co-conspirator that at least two racketeering acts would be committed by a member of the conspiracy in the conduct of the affairs of the enterprise. The Government is not required to prove that the Defendant personally committed two racketeering acts, or that he agreed to personally commit two racketeering acts. Rather, the Government must prove beyond a reasonable doubt that the Defendant agreed to participate in the enterprise with the knowledge and intent that at least one member of the RICO conspiracy (which could be the Defendant himself) would commit at least two predicate racketeering acts in the conduct of affairs of the enterprise.

Moreover, the indictment need not specify the predicate racketeering acts that the Defendant agreed would be committed by some member of the conspiracy in the conduct of the affairs of the enterprise. Rather, where it is alleged, as in Count One of this indictment, that it was agreed that multiple acts indictable under the applicable laws would be committed, the jury is not limited to considering only the specific racketeering acts alleged in Count Two of this indictment, the RICO substantive Count. Rather, the jury may also consider evidence presented of other racketeering acts committed or agreed to be committed by any co-conspirator in furtherance of the enterprise's affairs, including racketeering acts in which the Defendant is not named in the indictment, to determine

whether the Defendant agreed that at least one member of the conspiracy would commit two or more racketeering acts.[1]

Moreover, in order to convict the Defendant of the RICO conspiracy offense, the jury's verdict must be unanimous as to which type or types of predicate racketeering activity the Defendant agreed would be committed; for example, at least two acts of extortion, or honest services mail or wire fraud, or State law bribery, or money laundering, or obstruction of justice, or one of each, or any combination thereof.

Furthermore, to establish the requisite conspiratorial agreement, the Government is not required to prove that each co-conspirator explicitly agreed with every other co-conspirator to commit the substantive RICO offense, or knew all his fellow conspirators or was aware of all of the details of the conspiracy. Rather, to establish sufficient knowledge, it is only required that the Defendant know the general nature and common purpose of the conspiracy and that the conspiracy extends beyond his individual role. Moreover, the elements of a RICO conspiracy, such as the conspiratorial agreement, the Defendant's knowledge of it, and the Defendant's participation in the conspiracy, may be inferred from circumstantial evidence. For example, when the evidence establishes that the Defendant and at least one other conspirator committed several racketeering acts in furtherance of the charged enterprise's affairs, the jury may infer the existence of the requisite agreement to commit a RICO offense.[2]

---

[1] See, e.g., United States v. Glecier, 923 F.2d 496, 499-500 (7th Cir. 1991); United States v. Crockett, 979 F.2d 1204, 1208-09 (7th Cir. 1992); United States v. Phillips, 874 F.2d 123, 125-28 (3d Cir. 1989).

[2] See, e.g., United States v. Sutherland, 656 F.2d 1181, 1187 n. 4 (5th Cir. 1981); United States v. Elliott, 571 F.2d 880, 903 (5th Cir. 1978); United States v. Ashman, 979 F.2d 469, 492 (7th Cir. 1992); United States v. Crockett, 979 F.2d 1204, 1208-09 (7th Cir. 1992); United States v. Carlock, 806 F.2d 535, 547 (5th Cir. 1986); United States v. Melton, 689 F.2d 679, 683 (7th Cir. 1982).

However, it is for the jury to determine whether, based on the entirety of the evidence, the Government has proven that the Defendant entered into the required conspiratorial agreement. Furthermore, it is not necessary that the Government prove that a particular Defendant was a member of the conspiracy from its beginning. Different persons may become members of the conspiracy at different times.

If you find that there is a conspiracy, you may consider the acts and statements of any other member of the conspiracy during and in the furtherance of the conspiracy as evidence against a Defendant whom you have found to be a member of it. When persons enter into a conspiracy, they become agents for each other, so that the act or statement of one conspirator during the existence of, and in furtherance of, the conspiracy is considered the act or statement of all the other conspirators and is evidence against them all.

Moreover, a Defendant may be convicted as a conspirator even though he or she plays a minor role in the conspiracy, provided that you find beyond a reasonable doubt that the conspiracy existed, and that the Defendant knowingly participated in the conspiracy with the intent to assist other conspirators in accomplishing its objective or objectives.

## AUTHORITY

Eleventh Circuit Pattern Jury Instructions, § 71.2 (2003 ed.); Seventh Circuit Pattern Jury Instructions (1999 ed.); Salinas v. United States, 522 U.S. 52, 62-65 (1997); United States v. Abbell, 271 F.3d 1286, 1299 (11th Cir. 2001); United States v. Nguyen, 255 F.3d 1335, 1341 (11th Cir. 2001); United States v. To, 144 F.3d 737, 744 (11th Cir. 1998); United States v. Starrett, 55 F.3d 1525, 1543-44 (11th Cir. 1995); United States v. Posada-Rios, 158 F.3d 832, 857 (5th Cir. 1998); United States v. Elliot, 571 F.2d 880, 903-04 (5th Cir. 1978); United States v. Zichettello, 208 F.3d 72, 100 (2d Cir. 2000); United States v. Quintanilla, 2 F.3d 1469, 1484 (7th Cir. 1993); United States v. Eufrasio, 935 F.2d 553, 577 (3d Cir. 1991); United States v. Rastelli, 870 F.2d 822, 825 (2d Cir. 1989); United States v. Neapolitan, 791 F.2d 489, 498 (7th Cir. 1968); Smith v. Berg, 247 F.3d 532, 537-38 (3d Cir. 2001); MCM Partners, Inc. v. Andrews-Bartlett & Assocs., 62 F.3d 967, 979 (7th Cir. 1995); Napoli v. United States, 45 F.3d 680, 683-84 (2d Cir. 1995); United States v. Viola, 35 F.3d 37, 42-43 (2d Cir. 1994).

UNITED STATES' PROPOSED JURY INSTRUCTION NO. 17

Eleventh Circuit Pattern Jury Instructions, Criminal

Offense Instruction No. 71.1 (Modified by the United States)

## RICO SUBSTANTIVE OFFENSE
### 18 U.S.C. § 1962(c)

Count Two of the indictment charges that from in or about August 1997, to on or about January 20, 2003, Defendants Siegelman and Hamrick were persons associated with an "enterprise" engaged in, or the activities of which affected, interstate commerce, and that they knowingly and willfully conducted or participated in the conduct of the enterprise's affairs "through a pattern of racketeering activity," in violation of Title 18, United States Code, Section 1961 and 1962(c).

The term "enterprise" includes any partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity. A Government entity, such as the Executive Department of the State of Alabama, may constitute an "enterprise."

The term "racketeering activity" includes any act in violation of Title 18 of the United States Code relating to extortion (section 1951), honest services mail and wire fraud (sections 1341, 1343, and 1346), money laundering (section 1956), or obstruction of justice (section 1512), and any act in violation of Alabama Code 1975 relating to bribery (section 13A-10-61) or Fair Campaign Practices Act bribery (section 17-22A-7(c)).

The term "pattern of racketeering activity" requires at least two acts of "racketeering activity," sometimes called predicate offenses, which must have been committed within ten years of each other, one of which must have occurred after October 15, 1970.

So, in order to establish that Defendants Siegelman and Hamrick named in Count Two of the indictment, or either of them, committed the offense charged in that Count, there are five specific facts which must be proved beyond a reasonable doubt:

First:   That the Defendant was employed by or associated with the "enterprise" as defined in these instructions;

Second:  That the Defendant knowingly and willfully committed, or knowingly and willfully aided and abetted the commission of, at least two of the predicate offenses hereinafter specified;

Third:  That the two predicate offenses allegedly knowingly and willfully committed, or knowingly and willfully aided and abetted by the Defendant, were connected with each other by some common scheme, plan or motive so as to be a pattern of criminal activity and not merely a series of separate, isolated or disconnected acts;

Fourth:  That through the commission or aiding and abetting the commission of two or more connected offenses, the Defendant conducted or participated in the conduct of the "enterprise's" affairs; and

Fifth:   That the enterprise was engaged in, or that its activities affected, interstate commerce.

With respect to the first specific fact stated above, the Government must prove beyond a reasonable doubt that the Defendant was "employed by" or "associated with" the enterprise. The Government need not prove both; either one is sufficient to establish this element. The term "employed by" should be given its common, plain meaning. Thus, a person is "employed by" an enterprise when, for example, he is on the payroll of the enterprise and performs services for the enterprise, holds a position in the enterprise, or has an ownership interest in the enterprise.[3]

"Associated with" also should be given its plain meaning. As stated in Webster's Third New International Dictionary (1971 ed.), "associate" means "to join, often in a loose relationship as a

---

[3]  See United States v. Gabrielle, 63 F.3d 61, 68 (1st Cir. 1995); United States v. Console, 13 F.3d 641, 654 (3d Cir. 1993).

partner, fellow worker, colleague, friend, companion or ally . . . to join or connect with one another." Therefore, a person is "associated with" an enterprise when, for example, he joins with other members of the enterprise and knowingly aids or furthers the activities of the enterprise or conducts business with or through the enterprise.

It is not required that the Defendant have been "employed by" or "associated with" the enterprise for the entire time the enterprise existed. The Government also is not required to prove that the Defendant had a formal position in the enterprise, or participated in all the activities of the enterprise, or had full knowledge of all the activities of the enterprise, or knew about the participation of all the other members of the enterprise. Rather, it is sufficient that the Government prove beyond a reasonable doubt that, at some time during the existence of the enterprise as alleged in the indictment, the Defendant was "employed by" or "associated with" the enterprise within the meaning of those terms as I have just explained and that he knew of the general nature of the enterprise, and that the enterprise extended beyond his own role in the enterprise.

With respect to the second specific fact stated above, the Government must prove beyond a reasonable doubt that the Defendant under consideration knowingly and willfully committed, or aided and abetted the commission of any two of the Racketeering Acts specifically alleged and described in the indictment. A Defendant is guilty of a particular Racketeering Act if the Government has proven beyond a reasonable doubt that the Defendant under consideration knowingly and willfully committed, or aided and abetted the commission of any one of the predicate offenses specifically alleged and described under the heading for that particular Racketeering Act. For example, for you to find that Defendant Siegelman knowingly and willfully committed, or aided and abetted the commission of Racketeering Act 1, the Government must prove beyond a reasonable doubt that Defendant Siegelman knowingly and willfully committed, or aided and abetted the

26

commission of, at least one of the predicate offenses alleged and described in Racketeering Acts 1(a) through (g). In addition, for you to find that Defendant Hamrick knowingly and willfully committed, or aided and abetted the commission of Racketeering Act 2, the Government must prove beyond a reasonable doubt that Defendant Hamrick knowingly and willfully committed, or aided and abetted the commission of, at least one of the predicate offenses alleged and described in Racketeering Acts 2(c) through (o).

You are further instructed, however, that you must unanimously agree concerning each Defendant under consideration as to which of the two predicate offenses or Racketeering Acts the Defendant is alleged to have committed, or aided and abetted in committing. It would not be sufficient if some of the jurors should find that a Defendant committed two of the predicate offenses while the remaining jurors found that such Defendant committed two different predicate offenses; you must all agree upon at least two of the same predicate offenses in order to find a Defendant guilty of Count Two. In finding that a Defendant committed a predicate offense or Racketeering Act, you must find that the Defendant acted with the mens rea that is required to prove that particular charged predicate offense.[4]

Shortly, I will instruct you on the elements regarding each charged predicate offense or racketeering act in Count Two.

---

[4]Note that every court that has considered the issue has held that RICO does not require any mens rea or scienter element beyond what the predicate offenses require. See, e.g., United States v. Pepe, 747 F.2d 632, 675-76 (11th Cir. 1984); United States v. Baker, 63 F.3d 1478, 1492-93 (9th Cir. 1995); United States v. Blinder, 10 F.3d 1468, 1477 (9th Cir. 1993); United States v. Biasucci, 786 F.2d 504, 512-13 (2d Cir. 1986); United States v. Scotto, 641 F.2d 47, 55-56 (2d Cir. 1980); United States v. Boylan, 620 F.2d 359, 361-62 (2d Cir. 1980). Therefore, the jury must be instructed that it must find whatever mens rea is required to prove the charged predicate racketeering acts, which may vary depending on the offense (i.e., intentional, knowing, or willful, etc.).

You must find beyond a reasonable doubt that the Racketeering Acts committed by the Defendant are "related"; that is, have the same or similar purposes, results, participants, victim, or methods of commission, or be otherwise interrelated by distinguishing characteristics and not be merely isolated events. Two Racketeering Acts may be "related" even though they are dissimilar or not directly related to each other, provided that the Racketeering Acts are related to the same enterprise. For example, the requisite relationship between the RICO enterprise and a Racketeering Act may be established by evidence that the Defendant was enabled to commit the Racketeering Act solely by virtue of his position in the enterprise or involvement in or control over its affairs, or by evidence that the Racketeering Act benefited the enterprise, or by evidence the Racketeering Act promoted or furthered the purposes of the enterprise.

You must find beyond a reasonable doubt that the Racketeering Acts themselves either extended over a substantial period of time or posed a threat of continued criminal activity. The Government need not prove such a threat of continuity by any mathematical formula or by any particular method of proof, but rather may prove it in a variety of ways. For example, the threat of continued unlawful activity may be established when the evidence shows that the Racketeering Acts are part of a long-term association that exists for criminal purposes or when the Racketeering Acts are shown to be the regular way of conducting the affairs of the enterprise.

Moreover, in determining whether the Government has proven the threat of continued unlawful activity, you are not limited to consideration of the specific Racketeering Acts charged against the Defendants; rather, in addition to considering such acts, you may consider the nature of

the enterprise, and other unlawful activities of the enterprise and its members viewed in their entirety, including both charged and uncharged unlawful activities.[5]

With respect to the fourth specific fact stated above -- that the Defendant conducted or participated in the conduct of the affairs of the enterprise -- the Government must prove beyond a reasonable doubt that the Defendant was something more than an outsider lending aid to the enterprise. It must be proved that the Defendant had some part in either the management or the operation of the affairs of the enterprise itself. Thus, it need not be proved that the Defendant had primary responsibility or even a managerial position; it is enough if the Defendant was involved in conducting the operation of the affairs of the enterprise as a lower level participant. Such proof may include evidence that the Defendant intentionally performed acts, functions or duties which are necessary to, or helpful in, the operation of the enterprise. "An enterprise is 'operated' not just by upper management but also by lower-rung participants in the enterprise who are under the direction of upper management" or carry out upper management's orders. [Reves v. Ernst & Young, 507 U.S. 170, 184 (1993)]. Therefore, you may find guilty "all who participate in the conduct of [the]

---

[5] See H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 299, 242-43 (1989); United States v. Gonzalez, 921 F.2d 1530, 1544-45 & n. 23 (11th Cir. 1991); United States v. Link, 921 F.2d 1523, 1527 (11th Cir. 1991); United States v. Hobson, 893 F.2d 1267 (11th Cir. 1990); United States v. Richardson, 167 F.3d 621, 625-26 (D.C. Cir. 1999); Tabas v. Tabas, 47 F.3d 1280, 1294-95 (3d Cir. 1995) (en banc); United States v. Busacca, 936 F.2d 232, 238 (6th Cir. 1991); United States v. Alkins, 925 F.2d 541, 551-53 (2d Cir. 1991); United States v. Coiro, 922 F.2d 1008, 1017 (2d Cir. 1991); United States v. Kaplan, 886 F.2d 536, 543 (2d Cir. 1989); United States v. Idelicato, 865 F.2d 1370, 1383-84 (2d Cir. 1989) (en banc).

enterprise, whether they are generals or foot soldiers." [United States v. Oreto, 37 F.3d 739, 751 (1st Cir. 1994)].

With respect to the fifth specific fact -- the requirement that the "enterprise" was engaged in, or that its activities affected, interstate commerce--the Government contends that the Executive Department of the State of Alabama receives funds each year from the United States Treasury and regulates businesses and administers various programs and projects that involve the interstate movement of goods and services and that, in conducting the affairs of the enterprise, the Defendants caused the movement of money, goods, and services from one State to another State, caused funds to be deposited in and withdrawn from financial institutions regulated by the Federal Deposit Insurance Corporation, and utilized and caused to be utilized interstate communications facilities by engaging in long distance telephone conversations, by sending and receiving interstate facsimile transmissions, and by causing the transmission of funds by mail or by wire in interstate commerce from one State to another State. You are instructed that if you find beyond a reasonable doubt that these transactions or events occurred, and that they occurred in, or as a direct result of, the conduct of the affairs of the alleged enterprise, the required affect upon interstate commerce has been established. If you do not so find, the required effect upon interstate commerce has not been established.

If you find that the evidence is sufficient to prove that the enterprise was "engaged in" interstate commerce or foreign commerce, the required nexus to interstate or foreign commerce is established, and therefore the Government is not required to prove the alternative that the activities of the enterprise affected interstate or foreign commerce.

Regarding that alternative method of satisfying this element, to establish the requisite effect on interstate or foreign commerce, the Government is not required to prove a significant or

substantial effect on interstate or foreign commerce. Rather, a minimal effect on interstate or foreign commerce is sufficient.

It is not necessary for the Government to prove that the individual Racketeering Acts themselves affected interstate or foreign commerce; rather, it is the enterprise and its activities considered in their entirety that must be shown to have had that effect. On the other hand, this effect on interstate or foreign commerce may be established through the effect caused by the individual Racketeering Acts.

Moreover, it is not necessary for the Government to prove that the Defendant knew that the enterprise would affect interstate or foreign commerce, that the Defendant intended to affect interstate or foreign commerce, or that each Defendant engaged in, or his activities affected, interstate or foreign commerce.

## AUTHORITY

Eleventh Circuit Pattern Jury Instructions, § 71.2 (2003 ed.); Seventh Circuit Pattern Jury Instructions, p. 324 (1999 ed.); 2B O'Mally, Grenig, Lee, Federal Jury Practice and Instructions, § 56.05 (5th ed. 2000); United States v. Robertson, 514 U.S. 669, 671-72 (1995); Reves v. Ernest & Young, 507 U.S. 170, 179-86 (1993); H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 242-43 (1989); United States v. Beasley, 72 F.3d 1518, 1526 (11th Cir. 1996); United States v. Gonzalez, 921 F.2d 1530, 1540, 1544-45 & n.23 (11th Cir. 1991); United States v. Link, 921 F.2d 1523, 1527 (11th Cir. 1991); United States v. Hobson, 893 F.2d 1267 (11th Cir. 1990); United States v. Norton, 867 F.2d 1359 (11th Cir. 1989)(collecting cases); United States v. Carter, 721 F.2d 1514, 1526-27 (11th Cir. 1984); United States v. Posada-Rios, 158 F.3d 832, 856-57 (5th Cir. 1998); United States v. Phillips, 664 F.2d 971, 1011-12 (5th Cir. 1981); United States v. Stratton, 649 F.2d 1066, 1075 (5th Cir. 1981); United States v. Bright, 630 F.2d 804, 830 (5th Cir. 1980); United States v. Elliott, 571 F.2d 880, 899 (5th Cir. 1978); United States v. Brown, 555 F.2d 407 (5th Cir. 1977), cert. denied, 435 U.S. 904 (1978); United States v. Marino, 277 F.3d 11, 33-35 (1st Cir. 2002); United States v. Riddle, 249 F.3d 529, 537 (6th Cir. 2001); De Falco v. Bernas, 244 F.3d 286, 309 (2d Cir. 2001); United States v. Frega, 179 F.3d 793, 800-01 (9th Cir. 1999); United States v. Miller, 116 F.3d 641, 673-74 (2d Cir. 1997); United States v. White, 116 F.3d 903, 925, 925, n. 7 & n. 8 (D.C. Cir. 1997); United States v. Farmer, 924 F.2d 647, 651 (7th Cir. 1991); United States v. Doherty, 867 F.2d 47, 68 (1st Cir. 1989); United States v. Muskovsky, 863 F.2d 1319, 1325 (7th Cir. 1988); United States v. Qaoud, 777 F.2d 1105, 1115-17 (6th Cir. 1985); United States v. Conn, 769 F.2d 420, 423-24 (7th Cir. 1985); United States v. Bagnariol, 665 F.2d 877, 892-93 (9th Cir. 1981); United States v. Long, 651 F.2d 239, 241-42 (4th Cir. 1981); United States v. Rone, 598 F.2d 564, 573 (9th Cir. 1979);

United States v. Zichetello, 208 F.3d 72, 99 (2d Cir. 2000); United States v. Tocco, 200 F.3d 401, 425 (6th Cir. 2000);  United States v. Gabriele, 63 F. 3d 61, 98 (1st Cir. 1995);  United States v. Console, 13 F. 3d 641, 653 (3d Cir. 1993); United States v. Mokol, 957 F.2d 1410 1417 (7th Cir. 1992);  United States v. Eufrasio, 935 F.2d 553, 566-67, 577 n.29 (3d Cir. 1991); United States v. Rastelli; 870 F.2d 827, 828 (2d Cir. 1989) (collecting cases); United States v. Yonan, 800 F.2d 164, 167 (7th Cir. 1986); United States v. Tille, 729 F.2d 615, 620 (9th Cir. 1984); United States v. Herman, 589 F.2d 1191, 1194, 1198 (3d Cir. 1978), cert. denied, 441 U.S. 913 (1979);  United States v. Forsythe, 560 F.2d 1127, 1136, n.14 & n.15 (3d Cir. 1977); United States v. McMonagle, 437 F. Supp. 721, 723 (E.D. Pa. 1977); United States v. Parise, 159 F.3d 790, 796 (3d Cir. 1980); United States v. Hurley, 63 F.3d 1, 11 (1st Cir. 1995); United States v. Wong, 40 F.3d 1347, 1373, 1375 (2d Cir. 1994);  United States v. Viola, 35 F.3d 37, 41 (2d Cir. 1994); United States v. Oreto, 37 F.3d 739, 750 (1st Cir. 1994); United States v. Weiner, 3 F.3d 17, 23-24 (1st Cir. 1993); University of Maryland v. Peat, Marwick, Main, 996 F.2d 1534, 1539 (3d Cir. 1993); United States v. Polanco, 145 F.3d 536, 541 (2d Cir. 1998); United States v. Grubb, 11 F.3d 426, 439 (4th Cir. 1993); United States v. Tillem, 906 F.2d 814, 822 (2d Cir. 1990); United States v. Angiulo, 897 F.2d 1169, 1180 (1st Cir. 1990); United States v. Salerno, 868 F.2d 524, 533 (2d Cir. 1989); United States v. Indelicato, 865 F.2d 1370, 1382-84 (2d Cir. 1989) (en banc); United States v. Pieper, 854 F.2d 1020, 1026-27 (7th Cir. 1988); United States v. Horak, 833 F.2d 1235, 1239-40 (7th Cir. 1987);  United States v. Robilotto, 828 F.2d 940, 947-48 (2d Cir. 1987); United States v. Provenzano, 688 F.2d 194, 200 (3d Cir. 1982); United States v. Lee Stoller Enterprises, Inc., 652 F.2d 1313, 1319 (7th Cir. 1981); United States v. Weisman, 624 F.2d 1118, 1121-23 (2d Cir. 1980); United States v. Richardson, 167 F.3d 621, 625-26 (D.C. Cir. 1999); Tabas v. Tabas, 47 F.3d 1280, 1294-95 (3d Cir. 1995) (en banc); United States v. Busacca, 936 F.2d 232, 238 (6th Cir. 1991); United States v. Alkins, 925 F.3d 541, 551-53 (2d Cir. 1991); United States v. Coiro, 922 F.2d 1008, 1017 (2d Cir. 1991); United States v. Kaplan, 886 F.2d 536, 543 (2d Cir. 1989); United States v. Hamilton, 334 F.3d 170 (2d Cir.), cert. denied, 540 U.S. 985 (2003); United States v. Freeman, 6 F.3d 586, 596-97 (9th Cir. 1993); United States v. Sisk, 476 F.Supp. 1061 (M.D. Tenn. 1979).

UNITED STATES' PROPOSED JURY INSTRUCTION NO. 18

Eleventh Circuit Pattern Jury Instructions, Criminal

Offense Instruction Nos. 66.1 and 66.2 (Modified by the United States)

<u>INTERFERENCE WITH COMMERCE BY EXTORTION
HOBBS ACT -- RACKETEERING
(UNDER COLOR OF OFFICIAL RIGHT)
AND
(BY FEAR OF ECONOMIC HARM)
18 U.S.C. § 1951(a)</u>

Title 18, United States Code 1951(a), makes it a Federal crime or offense for anyone to extort something from someone else and, in doing so, to obstruct, delay or affect commerce or the movement of articles in commerce. Defendant Siegelman is charged with extortion under color of official right in Count Two, Racketeering Act 1(a). He is further charged with extortion under color of official right or by wrongful use of fear of economic harm in Count Two, Racketeering Acts 5(a) and 5(c), and in Count 34.

Defendant Siegelman can be found guilty of each offense only if all of the following facts are proved beyond a reasonable doubt:

<u>First</u>: That Defendant Siegelman induced the person described in the indictment to part with property;

<u>Second</u>: That Defendant Siegelman did so knowingly and willfully by means of "extortion," as hereafter defined; and

<u>Third</u>: That the extortionate transaction delayed, interrupted or affected interstate commerce.

The term "property" includes not only money and other tangible things of value, but also includes any intangible right considered as a source or element of income or wealth.

The term "extortion," in this context, means the wrongful acquisition of property from someone else under color of official right. Extortion "under color of official right" is the

33

wrongful taking or receipt by a public officer of property not due to the officer knowing that the payment or property was taken or received in return for performing or withholding official acts.

Extortion also means to obtain property from someone else with that person's consent, but whose consent is brought about or induced by the wrongful use of actual or threatened force, violence or fear. The term "fear" means a state of anxious concern, alarm or apprehension of harm, and it includes fear of economic loss as well as fear of physical violence.

The term "wrongful" means to obtain property unfairly and unjustly by one having no lawful claim to it.

While it is not necessary to prove that Defendant Siegelman specifically intended to affect commerce, it is necessary that the Government prove that the natural consequences of the acts alleged in the indictment would be to delay, interrupt or affect "commerce," which means the flow of commerce or business activities between a State and any point outside of that State.

You are instructed that you may find that the requisite effect upon commerce has been proved if you find beyond a reasonable doubt, in regard to Count Two, Racketeering Act 1(a), that the CON Board made decisions and formulated and implemented regulations and policies that affected businesses that engaged in commerce and business activities both within and without the State of Alabama, and which actually did business outside the State of Alabama, and, in regard to Count Two, Racketeering Acts 5(a) and 5(c), and to Count 34, that the Alabama Department of Transportation made decisions and formulated and implemented regulations and policies that affected businesses that engaged in commerce and business activities both within and without the State of Alabama, and which actually did business outside the State of Alabama.

UNITED STATES' PROPOSED JURY INSTRUCTION NO. 19

CONSPIRACY TO INTERFERE WITH COMMERCE BY EXTORTION
HOBBS ACT -- RACKETEERING
(UNDER COLOR OF OFFICIAL RIGHT)
18 U.S.C. § 1951(a)

Title 18, United States Code, Section 1951(a), makes it a separate Federal crime or offense for anyone to knowingly conspire or agree with someone else to do something which, if actually carried out, would amount to extortion under color of official right. So, under this law, a "conspiracy" is an agreement or a kind of "partnership" in criminal purposes in which each member becomes the agent or partner of every other member. Defendant Siegelman is charged with conspiracy to commit extortion under color of official right in Count Two, Racketeering Act 2(a).

In order to establish a conspiracy offense, it is not necessary for the Government to prove that all of the people named in the indictment were members of the scheme; or that those who were members had entered into any formal type of agreement; or that the members had planned together all of the details of the scheme.

In addition, because the essence of the Hobbs Act conspiracy offense is the making of the agreement itself, it is not necessary for the Government to prove that the conspirators actually succeeded in accomplishing their unlawful plan.

What the evidence in the case must show beyond a reasonable doubt is:

First: That two or more persons, in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the indictment, that is, to obstruct, delay, and affect interstate commerce by extortion as I have defined those terms to you in my previous instructions on Section 1951; and

Second: That Defendant Siegelman, knowing the unlawful purpose of the plan, willfully joined in it.

35

A person may become a member of a conspiracy without knowing all of the details of the unlawful scheme, and without knowing who all of the other members are. So, if a Defendant has a general understanding of the unlawful purpose of the plan and knowingly and willfully joins in that plan on one occasion, that is sufficient to convict that Defendant for conspiracy even though the Defendant did not participate before, and even though the Defendant played only a minor part.

Of course, mere presence at the scene of a transaction or event, or the mere fact that certain persons may have associated with each other, and may have assembled together and discussed common aims and interests, does not, standing alone, establish proof of a conspiracy. In addition, a person who has no knowledge of a conspiracy, but who happens to act in a way that advances some purpose of one, does not thereby become a conspirator.

## AUTHORITY

Eleventh Circuit Pattern Jury Instructions, § 13.1 (2003 ed.); United States v. Pistone, 177 F.3d 957, 960 (11th Cir. 1999).

UNITED STATES' PROPOSED JURY INSTRUCTION NO. 20

## HOBBS ACT -- CAMPAIGN CONTRIBUTIONS

The acceptance by an elected official of a campaign contribution does not, in itself, constitute a violation of the Hobbs Act even though the donor has business pending before the official.

However, if a public official demands or accepts money in exchange for a specific requested exercise of his or her official power, such a demand or acceptance does constitute a violation of the Hobbs Act regardless of whether the payment is made in the form of a campaign contribution.

## AUTHORITY

Eighth Circuit Pattern Jury Instructions, § 6.18.1951 (2005 ed.); Evans v. United States, 504 U.S. 255 (1992).

UNITED STATES' PROPOSED JURY INSTRUCTION NO. 21

Eleventh Circuit Pattern Jury Instructions, Criminal

Offense Instruction No. 50.2 (Modified by the United States)

## MAIL FRAUD
## DEPRIVING ANOTHER OF INTANGIBLE RIGHT
## OF HONEST SERVICES
## 18 U.S.C. §§ 1341 AND 1346

Title 18, United States Code, Sections 1341 and 1346, make it a Federal crime or offense for anyone to use the United States mails or transmit something by private or commercial interstate carrier in carrying out a scheme to fraudulently deprive another of an intangible right of honest services. Defendant Siegelman alone is charged with honest services mail fraud in Count Two, Racketeering Acts 1(c) and (d), and Racketeering Acts 5(e) through (kk). Defendants Siegelman and Scrushy are each charged with honest services mail fraud in Counts Six, Seven, Eight, and Nine. Defendants Siegelman and Hamrick are each charged with honest services mail fraud in Count Two, Racketeering Acts 2(c) through 2(g), and in Counts Ten, Eleven, and Twelve. Defendants Siegelman and Roberts are each charged with honest services mail fraud in Counts Eighteen through Thirty-three.

Each Defendant can be found guilty of the offense of honest services mail fraud only if all of the following facts are proved beyond a reasonable doubt:

First: That the Defendant knowingly devised or participated in a scheme to fraudulently deprive the State of Alabama or the public of the intangible right of honest services, as charged;

Second: That the scheme included employing a material falsehood, concealing a material fact, or omitting a material fact;

Third: That the Defendant did so willfully with an intent to defraud; and

38

Fourth: That the Defendant used the United States Postal Service by mailing or by causing to be mailed or used a private or commercial interstate carrier by depositing or causing to be deposited with such carrier some matter or thing for the purpose of executing the scheme to defraud.

A "private or commercial interstate carrier" includes any business engaged in the transmission, transportation or delivery of messages or other articles in interstate commerce, that is, from any place in one State to any place in another State. If a message or other article is deposited with such a carrier it need not be proved that the message or article thereafter moved in interstate commerce from one State to another.

The word "scheme" includes any plan or course of action that deceives, deprives, or cheats the public out of or that intends to deceive, deprive, or cheat the public out of intangible right to honest services by employing a material falsehood or promise, concealing a material fact, or omitting a material fact.

To act with "intent to defraud" means to act knowingly and with the specific intent to deceive the public, ordinarily for the purpose of causing some financial loss to another or bringing about some financial gain to one's self.

A statement or representation is "false" or "fraudulent" if it relates to a material fact and is known to be untrue or is made with reckless indifference as to its truth or falsity, provided it is made or caused to be made with intent to defraud. A statement or representation may also be "false" or "fraudulent" when it constitutes a half truth, or effectively conceals a material fact, provided it is made with intent to defraud.

A "material fact" is a fact that would be important to a reasonable person in deciding whether to engage or not to engage in a particular transaction. A fact is "material" if it has or would have a natural tendency to influence, or is capable of influencing, the decision of the person or entity to

whom or to which it is or would be addressed. A false or fraudulent statement, representation, or promise can be material even if the decision maker did not actually rely on the statement, or even if the decision maker actually knew or should have known that the statement was false.

To "deprive the public of the intangible right of honest services" means to violate, or to cause a public official or employee to violate, his duty to provide honest services to the public.

Public officials and public employees inherently owe a fiduciary duty to the public to act in the public's best interest. If, instead, the official or employee acts or makes his decision based on the official's own personal interests -- such as accepting a bribe or receiving personal benefit from an undisclosed conflict of interest -- the official has defrauded the public of the official's honest services even though the State or department, agency, or regulatory board of the State  involved may not suffer any monetary loss in the transaction.

It is not necessary that the Government prove all of the details alleged in the indictment concerning the precise nature and purpose of the scheme; or that the material mailed or deposited with an interstate carrier was itself false or fraudulent; or that the alleged scheme actually succeeded in defrauding anyone; or that the use of the mail or the interstate carrier was intended as the specific or exclusive means of accomplishing the alleged fraud; or that the Defendant did the actual mailing or depositing.

What must be proved beyond a reasonable doubt is that the Defendant, with the specific intent to defraud, knowingly devised, intended to devise, or participated in, a scheme to defraud substantially the same as the one alleged in the indictment; and that the use of the United States mail or the interstate carrier was closely related to the scheme because the Defendant either mailed or deposited something or caused it to be mailed or deposited in an attempt to execute or carry out the scheme.

To "cause" the mails or an interstate carrier to be used is to do an act with knowledge that the use of the mails or an interstate carrier will follow in the ordinary course of business or where such use can reasonably be foreseen.

Each separate use of the mails or an interstate carrier in furtherance of a scheme to defraud constitutes a separate offense.

## AUTHORITY

Eleventh Circuit Pattern Jury Instructions, § 50.1 (2003 ed.); <u>Neder v. United States</u>, 527 U.S. 1 (1999); Eighth Circuit Pattern Jury Instructions, § 6.18.1341 (2000).

UNITED STATES' PROPOSED JURY INSTRUCTION NO. 22

Eleventh Circuit Pattern Jury Instructions, Criminal

Offense Instruction No. 51.2 (Modified by the United States)

### WIRE FRAUD
### DEPRIVING ANOTHER OF INTANGIBLE RIGHT
### OF HONEST SERVICES
### 18 U.S.C. §§ 1343 AND 1346

Title 18, United States Code, Sections 1343 and 1346, make it a Federal crime or offense for anyone to use interstate wire communications facilities in carrying out a scheme to fraudulently deprive another of an intangible right of honest services. Defendant Siegelman alone is charged with honest services wire fraud in Count Two, Racketeering Act 1(e). Defendants Siegelman and Hamrick are each charged with honest services wire fraud in Count Two, Racketeering Acts 2(h) through (o), and in Counts Thirteen and Fourteen.

Each Defendant can be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt:

First: That the Defendant knowingly devised or participated in a scheme to fraudulently deprive the public of the intangible right of honest services, as charged;

Second: That the scheme included employing a material falsehood, concealing a material fact, or omitting a material fact;

Third: That the Defendant did so willfully and with an intent to defraud; and

Fourth: That the Defendant transmitted or caused to be transmitted by wire in interstate commerce some communication for the purpose of executing the scheme to defraud.

The word "scheme" includes any plan or course of action that deceives, deprives, or cheats the public out of or that intends to deceive, deprive, or cheat the public out of intangible right to honest services by employing a material falsehood or promise, concealing a material fact, or omitting a material fact.

42

To act with "intent to defraud" means to act knowingly and with the specific intent to deceive the public, ordinarily for the purpose of causing some financial loss to another or bringing about some financial gain to one's self.

A statement or representation is "false" or "fraudulent" if it relates to a material fact and is known to be untrue or is made with reckless indifference as to its truth or falsity, provided it is made or caused to be made with intent to defraud. A statement or representation may also be "false" or "fraudulent" when it constitutes a half truth, or effectively conceals a material fact, provided it is made with intent to defraud.

A "material fact" is a fact that would be important to a reasonable person in deciding whether to engage or not to engage in a particular transaction. A fact is "material" if it has or would have a natural tendency to influence, or is capable of influencing, the decision of the person or entity to whom or to which it is or would be addressed. A false or fraudulent statement, representation, or promise can be material even if the decision maker did not actually rely on the statement, or even if the decision maker actually knew or should have known that the statement was false.

To "deprive the public of the intangible right of honest services" means to violate, or to cause a public official or employee to violate, his duty to provide honest services to the public.

Public officials and public employees inherently owe a fiduciary duty to the public to act in the public's best interest. If, instead, the official or employee acts or makes his decision based on the official's own personal interests -- such as accepting a bribe, taking a kickback or receiving personal benefit from an undisclosed conflict of interest -- the official has defrauded the public of the official's honest services even though the State or department, agency, or regulatory board of the State involved may not suffer any monetary loss in the transaction.

It is not necessary that the Government prove all of the details alleged in the indictment concerning the precise nature and purpose of the scheme; or that the material transmitted by wire was itself false or fraudulent; or that the alleged scheme actually succeeded in defrauding anyone; or that the use of interstate wire communications facilities was intended as the specific or exclusive means of accomplishing the alleged fraud; or that the Defendant personally used the wire communication facility.

What must be proved beyond a reasonable doubt is that the Defendant, with intent to defraud, knowingly and willfully devised, intended to devise, or participated in, a scheme to defraud substantially the same as the one alleged in the indictment; and that the use of the interstate wire communications facilities was closely related to the scheme because the Defendant either used, or caused to be used, wire communications facilities in interstate commerce in an attempt to execute or carry out the scheme.

To "cause" interstate wire communications facilities to be used is to do an act with knowledge that the use of such facilities will follow in the ordinary course of business or where such use can reasonably be foreseen.

Each separate use of the interstate wire communications facilities in furtherance of a scheme to defraud constitutes a separate offense.

## AUTHORITY

Eleventh Circuit Pattern Jury Instructions, § 51.1 (2003 ed.); Neder v. United States, 527 U.S. 1 (1999); Eighth Circuit Pattern Jury Instructions, § 6.18.1341 (2000).

UNITED STATES' PROPOSED JURY INSTRUCTION NO. 23

Eleventh Circuit Pattern Jury Instructions, Criminal

Offense Instruction No. 70.2 (Modified by the United States)

<u>MONEY LAUNDERING</u>
<u>CONCEALING PROCEEDS OF SPECIFIED UNLAWFUL ACTIVITY</u>
<u>18 U.S.C. § 1956(a)(1)(B)(i)</u>

Title 18, United States Code, Section 1956(a)(1)(B), makes it a Federal crime or offense for

anyone to knowingly engage in certain kinds of financial transactions commonly known as money

laundering. Defendant Siegelman is charged with money laundering in Count Two, Racketeering

Acts 1(f) and 1(g), and Racketeering Acts 5(ll) through 5(tt).

Defendant Siegelman can be found guilty of that offense only if all of the following facts are

proved beyond a reasonable doubt:

<u>First</u>: That Defendant Siegelman knowingly conducted, or attempted to conduct, a "financial
transaction" as hereafter defined;

<u>Second</u>: That Defendant Siegelman knew that the funds or property involved in the financial
transaction represented the proceeds of some form of unlawful activity.

<u>Third</u>: That the funds or property involved in the financial transaction did in fact involve the
proceeds of "specified unlawful activity," that is, the proceeds of the payment of a bribe by
Richard Scrushy to Defendant Siegelman in violation of 18 U.S.C. §§ 666, 1341, 1343, and
1951, and Ala. Code 1975 § 13A-10-61; and

<u>Fourth</u>: That Defendant Siegelman engaged in the financial transaction knowing that the
transaction was designed in whole or in part to conceal or disguise the nature, location,
source, ownership, or the control of the proceeds of such specified unlawful activity.

The term "conducts" means initiating, concluding, or participating in initiating or concluding

a transaction.

The term "transaction" means a purchase, sale, loan, pledge, gift, transfer, delivery or other

disposition of funds or property; and, with respect to a financial institution, includes a deposit,

withdrawal, transfer between accounts, loan, extension of credit, purchase or sale of any stock, bond, certificate of deposit, or other monetary instrument, or use of a safe deposit box.

The term "financial transaction" means a transaction which in any way or degree affects interstate or foreign commerce involving one or more "monetary instruments" which includes coin or currency of any country, travelers or personal checks, bank checks or money orders, or investment securities or negotiable instruments in such form that title thereto passes upon delivery

or

a transaction involving the use of a "financial institution" which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree. The term "financial institution" includes an insured bank or a commercial bank or trust company. A financial institution which is regulated by a Federal entity such as the Federal Deposit Insurance Corporation is engaged in, or the activities of which affect, interstate commerce.

The term "interstate or foreign commerce" includes any commercial activity that involves transportation or communication between places in two or more States or between some place in the United States and some place outside the United States.

The term "knowing that the funds or property involved in the financial transaction represented the proceeds of some form of unlawful activity" means that Defendant Siegelman knew that such funds or property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony offense under State or Federal or foreign law.

The term "knowing that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or the control of the proceeds of such specified unlawful activity" means that Defendant Siegelman must have conducted, or attempted to conduct,

46

the financial transaction knowing that the purpose of the transaction was to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.

The term "specified unlawful activity" means the bribery of a public official, i.e., the payment of a bribe by Richard Scrushy to Defendant Siegelman or a violation of 18 U.S.C. §§ 666, 1341, 1343, or 1951, or Ala. Code 1975 § 13A-10-61, as charged in Counts Two, Racketeering Acts 1(a) through (e), and Counts Three, Four, and Six.

Proof that Defendant Siegelman knew the purpose of the financial transaction, or attempted financial transaction, was to conceal or disguise the nature, location, source, ownership or control of the proceeds of specified unlawful activity may be established by proof that Defendant Siegelman actually knew, knew because of circumstantial evidence, or knew because he was willfully blind (or purposefully ignorant). In other words, you are entitled to find from the circumstances surrounding the financial transaction, or attempted financial transaction, what the purpose of that activity was and that Defendant Siegelman knew of that purpose. For example, if a person puts the proceeds of a criminal offense into a bank account held in the name of a legitimate business, you might find that the purpose of the transaction was to disguise the nature or source of the money by making criminal proceeds appear to be legitimate business income.

UNITED STATES' PROPOSED JURY INSTRUCTION NO. 24

## OBSTRUCTION OF JUSTICE
### 18 U.S.C. § 1512(b)(3)

Title 18, United States Code, Section 1512(b)(3) makes it a Federal offense for anyone to, or attempt to, corruptly persuade another person or engage in misleading conduct toward another person, with intent to hinder, delay, or prevent the communication to a law enforcement officer of the United States of information relating to the commission or possible commission of a Federal offense. Defendant Siegelman is charged with obstruction of justice in Count Two, Racketeering Acts 4(a) and (b) and Counts 16 and 17. Defendant Hamrick is charged with obstruction of justice in Racketeering Act 3 and Count 15.

To find a Defendant guilty of violating Section 1512(b)(3), the Government must prove beyond a reasonable doubt the following facts:

First: The Defendant did corruptly persuade, attempt to corruptly persuade, or knowingly engage in misleading conduct toward, another person;

Second: The Defendant did so with the intent to hinder, delay, or prevent the communication of information to a Federal law enforcement officer; and

Third: The information related to the commission or possible commission of a Federal offense.

The term "misleading conduct" means -- (A) knowingly making a false statement; (B) intentionally omitting information from a statement and thereby causing a portion of such statement to be misleading, or intentionally concealing a material fact, and thereby creating a false impression by such statement; (C) with intent to mislead, knowingly submitting or inviting reliance on a writing or recording that is false, forged, altered, or otherwise lacking in authenticity; (D) with intent to mislead, knowingly submitting or inviting reliance on a sample, specimen, map, photograph,

48

boundary mark, or other object that is misleading in a material respect; or (E) knowingly using a trick, scheme, or device with intent to mislead.

The term "corruptly persuades" does not include conduct which would be misleading conduct but for a lack of a state of mind. Rather, "corruptly persuades" means that the Defendant was motivated by an improper purpose.

Section 1512(b)(3) "does not depend on the existence or imminency of a federal case or investigation but rather on the possible existence of a federal crime and a defendant's intention to thwart an inquiry into that crime." [United States v. Veal, 153 F.3d 1233, 1250 (11th Cir. 1998).] Section 1512(f)(2) provides that, for purposes of a prosecution under § 1512(b)(3), "'no state of mind need be proved with respect to the circumstance' that the law enforcement officer . . . is a federal agent." [Id. (quoting 18 U.S.C. § 1512(f)(2)).] All that is required is that the "misleading information is likely to be transferred to a federal agent." [Id.] Consequently, "§ 1512(b)(3) does not require that a defendant know the federal nature of the crime about which he provides information because the statute criminalizes the transfer of misleading information which actually relates to a potential federal offense, regardless of whether the communicator of such information knows or believes that the crime about which he knowingly provides false or misleading information is federal." [Id. at 1252.] Finally, "[i]t is irrelevant . . . whether the person who provides false or misleading information that ultimately becomes relevant to a federal investigation intended that a federal investigator . . . receive that information; it is relevant only that a federal investigator . . . received it." [Id.]

AUTHORITY

18 U.S.C. § 1515(a)(3) & (6); United States v. Veal, 153 F.3d 1233 (11th Cir. 1998); United States v. Shotts, 145 F.3d 1289 (11th Cir. 1998); United States v. Khatami, 280 F.3d 907 (9th Cir. 2001); United States v. Rodolitz, 786 F.2d 77 (2d Cir. 1986).

UNITED STATES' PROPOSED JURY INSTRUCTION NO. 25

Eleventh Circuit Pattern Jury Instructions, Criminal

Offense Instruction No. 24 (Modified by the United States)

## BRIBERY CONCERNING PROGRAM RECEIVING FEDERAL FUNDS
## 18 U.S.C. § 666(a)(1)(B)

Title 18 of the United States Code, Section 666, makes it a Federal crime or offense for anyone who is an agent of an organization, or of a State or local Government, or any agency thereof, receiving significant benefits under a Federal assistance program, corruptly to solicit or demand for the benefit of any person, or to accept or agree to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, Government or agency involving any thing of value of $5,000 or more. Count Three charges Defendant Siegelman with the commission, and Defendant Scrushy with aiding and abetting the commission, of a violation of Section 666(a)(1)(B).

The Defendants can be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt:

First:  That Defendant Siegelman was an agent of the State of Alabama, as charged;

Second:  That, during a one year period, the State of Alabama received benefits in excess of $10,000 under a Federal program involving some form of Federal assistance;

Third:  That, during such one year period, Defendant Siegelman knowingly solicited, demanded, accepted or agreed to accept a thing of value, that is, approximately $500,000 from Defendant Scrushy, as charged;

Fourth:  That by such solicitation, demand, acceptance, or agreement to accept, Defendant Siegelman intended to be influenced or rewarded in connection with a transaction or series of transactions of the State of Alabama, which transaction or series of transactions involved something of value of $5,000 or more, that is, the appointment of Defendant Scrushy to the CON Board; and

Fifth:  That, in so doing, Defendant Siegelman acted corruptly.

50

An act is done "corruptly" if it is performed voluntarily, deliberately and dishonestly for the purpose of either accomplishing an unlawful end or result or of accomplishing some otherwise lawful end or lawful result by any unlawful method or means.

The term "agent" as relevant to this case means a person authorized to act on behalf of the State of Alabama, including a servant or employee.

The term "in any one year period" means a continuous period that commences no earlier than twelve months before the commission of the offense or that ends no later than twelve months after the commission of the offense. Such period may include time both before and after the commission of the offense.

UNITED STATES' PROPOSED JURY INSTRUCTION NO. 26

Eleventh Circuit Pattern Jury Instructions, Criminal

Offense Instruction No. 24 (Modified by the United States)

### FEDERAL FUNDS BRIBERY
### 18 U.S.C. § 666(a)(2)

Title 18 of the United States Code, Section 666, makes it a Federal crime or offense for anyone corruptly to give, offer, or agree to give anything of value to any person, with the intent to influence or reward an agent of an organization or of a State or local government, or any agency thereof, receiving significant benefits under a Federal assistance program, in connection with any business, transaction, or series of transactions of such organization, government or agency involving any thing of value of $5,000 or more. Count Four charges Defendant Scrushy with the commission of, and Defendant Siegelman with aiding and abetting the commission of, a violation of Section 666(a)(2).

The Defendants can be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt:

First: That Defendant Siegelman was an agent of the State of Alabama, as charged;

Second: That, during a one year period, the State of Alabama received benefits in excess of $10,000 under a Federal program involving some form of Federal assistance;

Third: That, during such one year period, Defendant Scrushy knowingly gave, offered, or agreed to give a thing of value, that is, approximately $500,000 to Defendant Siegelman, as charged;

Fourth: That by giving, offering, or agreeing to give a thing of value, Defendant Scrushy intended to influence or reward Defendant Siegelman in connection with a transaction or series of transactions of the State of Alabama, which transaction or series of transactions involved something of value of $5,000 or more, that is, the appointment of Defendant Scrushy to the CON Board; and

Fifth: That, in so doing, Defendant Scrushy acted corruptly.

An act is done "corruptly" if it is performed voluntarily, deliberately and dishonestly for the purpose of either accomplishing an unlawful end or result or of accomplishing some otherwise lawful end or lawful result by any unlawful method or means.

The term "agent" as relevant to this case means a person authorized to act on behalf of the State of Alabama, including a servant or employee.

The term "in any one year period" means a continuous period that commences no earlier than twelve months before the commission of the offense or that ends no later than twelve months after the commission of the offense. Such period may include time both before and after the commission of the offense.

UNITED STATES' PROPOSED JURY INSTRUCTION NO. 27

Eleventh Circuit Pattern Jury Instructions, Criminal

Offense Instruction No. 13.1 (Modified by the United States)

### GENERAL CONSPIRACY CHARGE
### 18 U.S.C. § 371

Title 18, United States Code, Section 371, makes it a separate Federal crime or offense for anyone to conspire or agree with someone else to do something which, if actually carried out, would amount to another Federal crime or offense. So, under this law, a "conspiracy" is an agreement or a kind of "partnership" in criminal purposes in which each member becomes the agent or partner of every other member. Count 5 of the indictment charges Defendants Siegelman and Scrushy with conspiracy to commit honest services mail fraud in violation of 18 U.S.C. § 371.

In order to establish a conspiracy offense, it is not necessary for the Government to prove that all of the people named in the indictment were members of the scheme; or that those who were members had entered into any formal type of agreement; or that the members had planned together all of the details of the scheme or the "overt acts" that the indictment charges would be carried out in an effort to commit the intended crime.

Also, because the essence of a conspiracy offense is the making of the agreement itself (followed by the commission of any overt act), it is not necessary for the Government to prove that the conspirators actually succeeded in accomplishing their unlawful plan.

What the evidence in the case must show beyond a reasonable doubt is:

First: That two or more persons, in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the indictment, that is to devise or intend to devise a scheme and artifice to defraud and deprive the State of Alabama of its right to the honest and faithful services of Defendant Siegelman and Defendant Scrushy in their capacities as Governor of the State of Alabama and a member of the CON Board, respectively, as well as other members of the CON Board, performed free from deceit,

54

favoritism, bias, self-enrichment, self-dealing, and conflict of interest concerning the CON Board to give HealthSouth membership on and representation at the CON Board and to allow HealthSouth to exert influence over the CON Board;

Second:  That the Defendant, knowing the unlawful purpose of the plan, willfully joined in it;

Third:  That one of the conspirators, during the existence of the conspiracy, knowingly committed at least one of the methods (or "overt acts") described in the indictment; and

Fourth:  That such "overt act" was knowingly committed at or about the time alleged in an effort to carry out or accomplish some object of the conspiracy.

An "overt act" is any transaction or event, even one which may be entirely innocent when considered alone, but which is knowingly committed by a conspirator in an effort to accomplish some object of the conspiracy.

A person may become a member of a conspiracy without knowing all of the details of the unlawful scheme, and without knowing who all of the other members are.  So, if a Defendant has a general understanding of the unlawful purpose of the plan and knowingly and willfully joins in that plan on one occasion, that is sufficient to convict that Defendant for conspiracy even though the Defendant did not participate before, and even though the Defendant played only a minor part.

Of course, mere presence at the scene of a transaction or event, or the mere fact that certain persons may have associated with each other, and may have assembled together and discussed common aims and interests, does not, standing alone, establish proof of a conspiracy.  Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of one, does not thereby become a conspirator.

UNITED STATES' PROPOSED JURY INSTRUCTION NO. 28

Eleventh Circuit Pattern Jury Instructions, Criminal

Offense Instruction No.13.5 (Modified by the United States)

PINKERTON INSTRUCTION
[PINKERTON V. U. S., 328 U.S. 640 (1946)]

In some instances, a conspirator may be held responsible under the law for a substantive offense in which he had no direct or personal participation if such offense was committed by other members of the conspiracy during the course of such conspiracy and in furtherance of its objects.

So, in this case, with regard to Counts Six through Nine, and insofar as Defendants Siegelman and Scrushy are concerned, respectively, if you have first found either of those Defendants guilty of the conspiracy offense as charged in Count Five of the indictment, you may also find Defendant Siegelman or Defendant Scrushy guilty of any of the offenses charged in Counts Six through Nine even though the particular Defendant did not personally participate in such offense if you find, beyond a reasonable doubt:

First: That the offense charged in such Count was committed by a conspirator during the existence of the conspiracy and in furtherance of its objects;

Second: That the Defendant under consideration was a knowing and willful member of the conspiracy at the time of the commission of such offense; and

Third: That the commission of such offense by a co-conspirator was a reasonably foreseeable consequence of the conspiracy.

UNITED STATES' PROPOSED JURY INSTRUCTION NO. 29

## STATE LAW BRIBERY
## ALA. CODE 1975 § 13A-10-61(a)(2)

Section 13A-10-61(a)(2) of the Alabama Code makes it a State crime or offense for a public servant to solicit, accept or agree to accept any pecuniary benefit upon an agreement or understanding that his vote, opinion, judgment, exercise of discretion or other action as a public servant will thereby be corruptly influenced. Defendant Siegelman is charged with State law bribery in Count Two, Racketeering Acts 1(b), 2(b), and 5(d).

Defendant Siegelman can be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt:

First: That Defendant Siegelman solicited, accepted, or agreed to accept a pecuniary benefit;

Second: That, at the time Defendant Siegelman solicited, accepted, or agreed to accept the pecuniary benefit, he was a public servant; and

Third: That, in so doing, there was "an agreement or understanding" that Defendant Siegelman's vote, opinion, judgment, exercise of discretion or other action as a public servant would be corruptly influenced by that pecuniary benefit.

A "pecuniary benefit" is any gain or advantage to the beneficiary, including any gain or advantage to a third person pursuant to the desire or consent of the beneficiary, that is in the form of money, property, commercial interests or anything else the primary significance of which is economic gain. Expenses associated with social occasions afforded public servants and party officers shall not be deemed a pecuniary benefit.

A public servant is any officer or employee of State Government, including the Governor, legislators and judges and any person or agency participating as an adviser, consultant or otherwise in performing a governmental function. A "governmental function" is any activity that a public servant is legally authorized to undertake on behalf of a government.

It is not necessary that there be an understanding, in the sense of an agreement, with the person unlawfully approached, but merely an understanding on the part of the bribe-seeker himself that his official action shall be influenced. The requisite state of mind is that of the actual or potential bribe-receiver, not that of the bribe-giver. A unilateral offer to accept a bribe is sufficient to establish an "understanding or agreement," thereby focusing on the state of mind of the one charged.

## AUTHORITY

McDonald v. Headrick, 554 F.2d 253, 254 (5th Cir. 1977); Staggs v. State, 299 So.2d 756 (1974); Ala. Code 1975, §§ 13A-10-1(7) and 13A-10-60(b)(1) and (2); Commentary, Ala. Code 1975 § 13A-10-61.

UNITED STATES' PROPOSED JURY INSTRUCTION NO. 30

<u>ALABAMA FAIR CAMPAIGN PRACTICES ACT BRIBERY</u>
<u>ALA. CODE 1975 § 17-22A-7(c)</u>
<u>STATE LAW BRIBERY</u>

Notwithstanding any other provision of law, including but not limited to, Ala. Code 1975, §

13A-10-61, Section 17-22A-7 of the Alabama Code makes it a State crime or offense for a candidate,

public official, or principal campaign committee to accept, solicit, or receive contributions either as a

bribe, as defined by Sections 13A-10-60 and 13A-10-61, <u>or</u> for the intention of corruptly influencing

the official actions of the public official or candidate for public office.  Defendant Siegelman is

charged with Alabama Fair Campaign Practices Act Bribery in Count Two, Racketeering Act 5(b).

Defendant Siegelman can be found guilty of that offense only if all of the following facts are

proved beyond a reasonable doubt:

<u>First</u>: That Defendant Siegelman accepted, solicited, or received contributions, that is, Defendant Siegelman solicited $100,000, or accepted, agreed to accept, or received $40,000 from Jimmy Lynn Allen;

<u>Second</u>: That at the time such contributions were accepted, solicited, or received, Defendant Siegelman was a candidate for public office, that is, Governor of the State of Alabama; and

<u>Third</u>: That, in so doing, there was "an agreement or understanding" that Defendant Siegelman's vote, opinion, judgment, exercise of discretion or other action as a candidate or public official would be corruptly influenced <u>or</u> that the contributions were accepted, solicited, or received for the intention of corruptly influencing his official actions as a public official or candidate for public office, that is, Defendant Siegelman solicited, accepted, agreed to accept, or received such contributions upon a promise to use official action and official influence as the Governor of the State of Alabama to facilitate Allen's business interests involving the Alabama Department of Transportation.

Any of the following shall be considered a contribution:

1. A gift, subscription, loan [i.e., "[a] transfer of money, property, or anything of value in consideration of a promise or obligation, conditional or not, to repay in whole or part," § 17-22A-2(a)(6)], advance, deposit of money or anything of value, a payment, a forgiveness of a loan, or payment of a third party, made for the purpose of influencing the result of an election.

2. A contract or agreement to make a gift, subscription, loan, advance, or deposit of money or anything of value for the purpose of influencing the result of an election.

3. Any transfer of anything of value received by a political committee from another political committee, political party, or other source.

A "candidate for public office" is any person who has either taken the action necessary under the laws of the State to qualify himself for nomination or for election to a state office, that is, qualified to be listed on an election ballot by filing qualification papers with a political party, or who had received contributions or made expenditures, or given his consent for any other person or persons to receive contributions or make expenditures equal to or more than $25,000, with a view toward bringing about his nomination or election to any state office other than one filled by election of the registered voters of any circuit or district within the State.

A "State office" is any office under the constitution and laws of the State filled by election of the registered voters of the State, such as the Governor, or of any circuit or district and shall include legislative offices.

## AUTHORITY

Ala. Code 1975 § 17-22A-2(a).

UNITED STATES' REQUESTED JURY INSTRUCTION NO. 31

Eleventh Circuit Pattern Jury Instructions, Criminal

Basic Instruction No. 11

### DUTY TO DELIBERATE

Any verdict you reach in the jury room, whether guilty or not guilty, must be unanimous. In other words, to return a verdict you must all agree. Your deliberations will be secret; you will never have to explain your verdict to anyone.

It is your duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But do not give up your honest beliefs solely because the others think differently or merely to get the case over with.

Remember that in a very real way you are judges - - judges of the facts. Your only interest is to seek the truth from the evidence in the case.

UNITED STATES' REQUESTED JURY INSTRUCTION NO. 32

Eleventh Circuit Pattern Jury Instructions, Criminal

Basic Instruction No. 12

<u>VERDICT</u>

When you go to the jury room, you should first select one of your members to act as your foreperson. The foreperson will preside over your deliberations and will speak for you here in court.

A form of verdict has been prepared for your convenience.

[Explain verdict]

You will take the verdict form to the jury room and when you have reached unanimous agreement, you will have your foreperson fill in the verdict form, date and sign it, and then return to the courtroom.

If you should desire to communicate with me at any time, please write down your message or question and pass the note to the marshal who will bring it to my attention. I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally. I caution you, however, with regard to any message or question you might send, that you should not tell me your numerical division at the time.